UNITED STATES v. HUGHES et al.

(*District Court, N. D. Texas.* March 23, 1888.)

1. CRIMINAL LAW—INSTRUCTIONS—DUTIES OF JURORS.
    The duty of jurors to find a verdict. Duty of each to consult with the others, and allow the views of his fellow-jurors to influence his mind in reaching his final conclusion. ·

2. SAME—REASONABLE DOUBT.
    Amount of proof required to convict. A reasonable doubt defined.[1]

3. SAME—CREDIT OF WITNESSES.
    Elements affecting credibility of witnesses. Judged of by jurors as they would judge of it in an important matter in every-day life.

---

[1] A reasonable doubt is one for which a sensible man can give a good reason, based on the evidence or want of evidence. It is such a doubt as a sensible man would act upon, or decline to act upon, in his own concerns. U. S. v. Jones, 31 Fed. Rep. 718. The guilt of an accused is proven beyond a reasonable doubt when, upon the entire comparison and consideration of all the evidence, the minds of the jurors are in that condition that they can say from the evidence they have and feel an abiding conviction to a moral certainty of the truth of the charge. A reasonable doubt does not consist of possible or conjectural doubts not growing out of the evidence, but is one which, when considering the evidence alone, leads the juror to hesitate, and upon which he would refuse to act

4. SAME—IMPEACHMENT OF WITNESSES.
    Manner of impeaching witnesses. Effect of impeaching testimony.
5. SAME—CONFESSIONS.
    Confessions. Caution with which oral confessions are to be received and considered by juries.
6. SAME—PRINCIPAL AND ACCESSORY.
    Statement of the charge against the defendants, who are principals.
7. SAME.
    Summing up of the evidence.
(*Syllabus by the Court.*)


Indictment for Robbing Mail Train.

*R. M. Wynne* and *Chas. B. Pearrs*, for the United States.

*C. W. Johnson, Robt. Arnold, Jas. T. Daniel*, and *Robt. West*, for defendants.


McCORMICK, J., (*charging jury.*)  1. In giving you a charge in this case, I desire to call your attention to the duty devolved upon jurors to find a verdict in the case submitted to them.  It is often stated in the argument of counsel—as has been earnestly done in this case by one of the counsel for the defense—that it is the duty of jurors to consider the evidence each for himself, uncontrolled and uninfluenced by the statements of counsel, the comments of the judge on matters of fact, or the views of some dominating mind in the jury-box; and upon each individual juror's own view he must reach a conclusion on the issue joined here, and adhere to it.  If such is the law, our practice of keeping the jury together on their retirement to consider on their verdict is all wrong, and each juror should be furnished the opportunity of wrapping himself in the solitude of his own thoughts, undisturbed by the presence of his fellows, and evolving from his own reflections his verdict in this or any given case.  Such has never been the practice where the English right of trial by jury is enjoyed.  As I construe the law, such is not the law or the logic of jury trials.  Upon the contrary, each juror is entitled to have, and, in my judgment, is bound to thoughtfully and impartially consider, the argument of counsel, the comments of the judge, and the views of his fellow-jurors, and allow all these such influence in helping him to a satisfactory conclusion as in his judgment their various suggestions deserve, and honestly to strive to bring his own mind and the minds of his fellows into harmony, so that the jury may agree upon a verdict.  It is true that if, in this case, or any given case, any one or more of the jury, after an earnest and impartial consideration of all these matters proper to be considered in weighing the proof, under the law applicable thereto, as given in the charge of the court, cannot bring his

in the important concerns of life.  Carr v. State, (Neb.) 37 N. W. Rep. 630.  Respecting "reasonable doubt" in criminal cases, see Knarr's Appeal. (Pa.) 9 Atl. Rep. 878; People v. Lee Sare Bo, (Cal.) 14 Pac. Rep. 310; McCullough v. State, (Tex.) 5 S. W. Rep. 175; White v. State, (Tex.) 3 S. W. Rep. 710, and note; U. S. v. Jackson, 29 Fed. Rep. 503, and note; People v. Kernaghan, (Cal.) 14 Pac. Rep. 566; Cowan v. State, (Neb.) 35 N. W. Rep. 405; State v. Robinson, (S. C.) 4 S. E. Rep. 570; Kidd v. State, (Ala.) 3 South. Rep. 442; State v. Maher, (Iowa,) 37 N. W. Rep. 2; People v. Cox, (Mich.) 38 N. W. Rep. 235; Lang v. State, (Ala.) 4 South. Rep. 193; Ochs v. People, (Ill.) 16 N. E. Rep. 662; U. S. v. King, 34 Fed. Rep. 302.

mind or their minds to concur in the conclusion of his or their fellows as to the guilt or innocence of the accused, each such juror not only may, but must, adhere to the final and fixed conclusion of his own mind, for it is the logic and the law of jury trials that the 12 minds of the jury must actually and honestly concur in a verdict, before a verdict can rightly be rendered.

2. In jury trials in civil cases,—that is, between citizens,—jurors are instructed to find a verdict on the preponderance of testimony.    The interest of the parties as well as of the public justifies the use of this rule in such cases, that a speedy end may be put to the strife.    But in all criminal cases, out of regard to the life or liberty or reputation and feelings of the accused, a larger measure of evidence is required to support a conviction, and juries are instructed that to warrant them in convicting the accused, the evidence must satisfy their minds of the guilt of the accused beyond a reasonable doubt.    Great stress is laid upon this rule by counsel for the accused in all criminal cases, and a highly exaggerated idea of its meaning is sought to be impressed upon the minds of the jury. It does not require that all possible doubt should be excluded from the mind, it is not mathematical certainty that is required, for such a degree of certainty cannot be produced by the force of human testimony    The doubt must be a substantial one, arising from the testimony or from the want of testimony on a material point.    It must be a reasonable doubt, such as would cause a reasonable and cautious man of average intelligence to hesitate in reaching a conclusion in a serious matter upon which he was called to decide affecting his private affairs.    You are to consider the evidence tending to show guilt offered you in the jury-box just as you would consider the same amount and character of evidence submitted to you in your every-day life, touching any serious matter in your business or domestic affairs; and if it would be sufficient to make you decide and act in such matters, feeling satisfied that you were deciding and acting rightly, then it is sufficient to support a conviction and to require a verdict of guilty; and unless it would make you so decide and act, you must acquit the accused.

3. You are the exclusive judges of the credibility of the witnesses, and of the weight of all and each particular of the testimony.    By the credibility of the witnesses I mean their disposition and intention to tell the truth in the testimony they have given.    Here, too, you judge in the jury-box just as you would out of it, just as all men of the intelligence and experience necessary to qualify them to sit on juries, always and everywhere, judge of the credit they should give to any one stating matters within his knowledge, and touching the interest of the person receiving the information.    In the court-house, in the jury-box, as everywhere, you judge from the relation of the witness to the case; his direct interest, or his connection with parties directly interested; the consistency or otherwise of the different parts of his testimony, one with the other; his whole manner of telling his story, and all like features with which experience makes every man of good intelligence and mature years familiar.    In judging of the weight of the testimony, having satisfied

yourself as to how far you can credit the witness, you will take into consideration all the other testimony in the case, the comparative intelligence of the several witnesses, the apparent capacity of each to take a correct and full impression of what occurred in his view, or was said in his hearing, and to retain a sound recollection of his impressions, and to express clearly—that is, convey substantially, to your minds—the impressions he has retained in his own mind. Until very recently parties, even in civil cases, were not (as a rule) permitted to testify, because the liability of such witnesses to suppress the truth or utter falsehood, as the same might affect their interest, was deemed so great as to render such testimony of too little value to let it go to the jury. It was also considered wrong to subject persons, or permit persons to be subjected, to so strong a temptation to commit the impious crime of perjury, by allowing them to testify in a case to which they were parties. Even yet, in the state courts in this state, for these or other reasons the party accused in a criminal case is not permitted to testify. But in this court, by a comparatively recent statute of the United States, accused persons are, at their own request, permitted to testify And both these defendants have testified in this case, and the question of their credibility is left entirely to you.

4. Closely connected with the matter of the credibility of witnesses is the manner of impeaching witnesses and its effect. It is permitted to show that the general character of the witness for truth in the community where he lives is bad, or to show that in a material matter, about which the witness could not be mistaken, his testimony is untrue; or to show that on a material point the statements of the witnesses on the stand are different from his statements on the same point at another time. I say in a material matter, for it is not every discrepancy or misstatement of a witness that tends to contradict and weaken or destroy his testimony. Sometimes immaterial discrepancies or misstatements by a witness strengthen our conviction of his veracity, for it is the common experience that persons perfectly truthful, who take distinct and correct impressions of the material facts, often have incorrect impressions and recollections of the immaterial incidents, even when their recollection of these seems to them to be distinct. I am not giving you a rule on this subject, but only calling your attention to the rules of common sense, which all men observe in seeking truth through the testimony of others. In this case it has been attempted to weaken or destroy the testimony of some of the witnesses for the government in each of the ways I have indicated; and all the proof bearing upon their credibility is to be considered by you, but you are still to determine for yourselves how far you should credit said witnesses in the testimony they have given in this case.

5. Confessions, when voluntarily made, and clearly proved, are taken as strong proof of guilt, because sane men do not voluntarily speak falsely against their own interest. But oral confessions are always to be received with care; and, besides being satisfied that the witness who testifies to the confession speaks truly, you must be satisfied that the witness could not be, or was not, mistaken as to the substance of the con-

fession. And where the witness is able to give the exact words of the accused, and these are so vague as to convey no definite meaning, or (in the circumstances in which the words were spoken) are susceptible of a meaning consistent with the innocence of the accused, they are not to be taken as a confession of guilt. The language of Jim Hughes, testified to by one of the witnesses, "I expect we will all be arrested for it, we are so hard up,"—is of this character, and you will not consider it as evidence against him.

6. Bearing these general principles in mind, you will weigh all the evidence in this case, both that introduced by the government and that offered for the defendants; and if, upon such consideration of the whole proof, you are satisfied beyond a reasonable doubt that the defendants are guilty, it will be your duty to say by your verdict that they are guilty. On the contrary, if on such consideration of the whole proof you have a reasonable doubt as to their guilt, you should return a verdict of not guilty.

7. The defendants are indicted separately, and charged with robbing the carrier of the United States mail of such mail, (being carrier on a railroad train,) near the town of Gordon, in Palo Pinta county, in this district, on the morning of the 23d January, 1887; and that, in effecting said robbery, they put the life of the carrier in jeopardy by the use of deadly weapons. All persons acting together in the commission of an offense are principals, and each is equally chargeable with all that is done by himself and by each of the others in the commission of the offense. There is, however, no necessary connection between the defendants, (here tried together for convenience and the economy of time,) and you may convict both or acquit both, or convict one and acquit the other, according to your view of the proof against each. The proof is abundant and all one way; and it is not disputed on this trial that, at the place and time charged in the indictment, the mail train was robbed, and that, in effecting the robbery, the parties robbing put the life of the carrier in jeopardy by the use of dangerous weapons. The proof shows that there were several persons engaged in committing the offense. One witness saw four persons and heard others, one counted six persons, and one of the robbers at the time said there were eight. The only real issue of fact for you to determine on this trial is, were the defendants, or either of them, of the number?

8. The government relies upon the testimony of the locomotive engineer and the three postal clerks, whose testimony tends to identify Jim Hughes as being one of the robbers. With the particulars of the testimony of each of these four witnesses you must now be familiar. It was clearly stated by the witnesses themselves, and it has been rehearsed by each of the six counsel who have argued the case, with a degree of candor and accuracy seldom attained in forensic discussion. If your impression and recollection of this proof does not in every particular agree with any one of the statements of it made by the different attorneys, I do not doubt that their statements and argument on it has called out most vividly in all the details your own impressions of this proof, and I will not run the hazard of

stating it differently from your recollection of it, by attempting myself to rehearse it. To identify these defendants the government also relies upon the testimony of Cornelius Taylor, who says that on Friday before the robbery he saw Ben Hughes, (who had been absent from the state for several years, and who claims to have returned not until Monday after the robbery,) giving the time of day and place and circumstances of his seeing him; and that on the morning of the robbery (Sunday, January 23, 1887,) he saw Jim Hughes and Ben Hughes (these two defendants) and two other men unknown to witness conferring together in a secluded place on the creek back of old man Hughes' (father of defendants) field, and that there was near them four horses, fastened in some way, whose color and appearance he describes; and that about a week after the robbery, in passing near old man Hughes' house, about 10 or 11 o'clock at night, witness saw some men on the porch, and on or by the fence near the porch, talking and laughing, and he overheard one, whose voice he recognized as Ben Hughes' voice, say: "You ought to have seen how quick he dropped the coal shovel when I jabbed the pistol in his face." The government has also offered the testimony of Bart Houx, who says that at a late hour (11 or 12 o'clock) of the night of the robbery (the time of the robbery being between 2 and 3 o'clock Sunday morning) he saw Jim Hughes and Harvy Carter pass the door of a livery stable in the town of Gordon. And the testimony of Dave Brooks, who says that on Sunday morning (the day of the robbery) he saw four men, each leading a horse, start from Jim Hughes' house going west towards the creek back of old man Hughes' field; giving the color of the horses. And the testimony of one Wolford, who says that he and Ben Hughes had been living together, or near each other, in the Indian Territory for some time previous to January, 1887, and that about the 10th or 13th of January Ben Hughes told witness that he (Ben) was busted, and that he was going down to Texas and make a raise by robbing trains, or any way he could, and proposed to witness that witness should go with him, which witness declined; and that a few weeks after that—not less than two or three weeks, and not longer than four or five weeks—witness again saw Ben Hughes, near McAlister in the Indian Territory, when Ben told him that he and several others had robbed a train at the trestle bridge near Gordon, and had made a good haul. And upon the testimony of Jim Dyer, who says that several months after the robbery Ben Hughes told witness that if he (witness) would go with him, (Ben,) witness could make plenty of money, and not have to work very hard for it. The defendants rely, first, on the insufficiency, as they claim, of the proof to show that they or either of them were participants in the commission of the offense. And in connection with this they rely upon the want of credibility of the witnesses Wolford, Taylor, and Houx, all of whom they have attacked, and if there is such insufficiency the defendants can well rely upon it, for the benignity of our laws is such that accused persons are conclusively presumed to be innocent until their guilt is established by sufficient proof. The defendants also rely upon their proof of *alibi*—that at the time of the commission of the offense they were at another place, too remote to permit

of their taking part in the robbery. The defendant Jim Hughes and his wife, and Mrs. Caps, his wife's sister, all testify that he was at his own house, five or six miles from the scene of the robbery, all of the night in which the robbery was committed. The testimony of the wife is contradicted by the testimony of Bart Houx, who says that on Monday morning next after the robbery, and again on Tuesday morning, he called at Jim Hughes' house, and asked Mrs. Hughes (his wife) if Jim was at home, and on both occasions was told "that he was not; that he had left home Saturday, to go up on Ironi to brand some horses, and had not returned yet." And all three are contradicted by the same witness, who says that he saw Jim Hughes, with Harvy Carter, pass the livery stable in Gordon at 11 or 12 o'clock the night of the robbery. The defendant Ben Hughes testifies that about the 13th of January he left his home in the Indian Territory, riding a certain horse and leading or driving another with a pack. He gives the different stages of his progress, making him arrive at his father's house about noon on Monday next after the robbery. He produces a witness, Fitzgerald, whose testimony tends to show that he saw Ben on Saturday afternoon, near Boonville, in Wise county, 40 or 50 miles or more from Gordon, traveling as Ben in his testimony says he was traveling. He also offers two other witnesses whose testimony tends to show that they saw Ben on Sunday and Monday traveling as described. There is some uncertainty as to the days, and some uncertainty as to these witnesses identifying Ben, as they were all strangers to him; but you will recollect the particulars of their testimony. This proof, as you will understand, is contradicted by the testimony of Taylor, who says he saw Ben at his father's house the Friday before the robbery, and again saw him the morning of the robbery back of his father's field. Ben also offers proof tending to show that he remained in Texas continuously from the time of his arrival at his father's house until his arrest, the particulars of which proof you will recollect without my detailing it. And now, in conclusion, I repeat: If upon the whole proof which I have permitted to go to you on this trial, as you received it and recollect it, you are satisfied beyond a reasonable doubt that the defendants, or either of them, were participants in said robbery, as to that defendant, one or both, so found by you to have taken part in said robbery, you should render a verdict of guilty. If the proof fails to so satisfy your minds as to the guilt of either, he is entitled to a verdict of not guilty.