## HILL (A SLAVE) *vs.* THE STATE.

The indictment charged the defendant as a principal. The evidence showed that another inflicted the mortal blow—the prisoner being present, aiding and abetting. *Held*, That the variance was immaterial; both being principals in law, as well as in deed; and the stroke of one being in law the stroke of the other.

Murder, in Decatur Superior Court. Tried before Judge ALLEN, May, 1859.

Hill, a slave, the property of William Perkins, was indicted for the murder of Margaret Saddler.

The jury found the defendant guilty. His counsel moved for a new trial on the following grounds:

1st. Because the court erred in compelling the defendant to testify in the case of the State against Grif, a slave, indicted and tried for the same offence, upon a separate bill of indictment.

2nd. Because the court erred in refusing to admit the evidence, as taken down in writing, that the defendant gave in on the trial of said Grif.

3rd. Because the court erred in refusing to permit others to prove what defendant's testimony was on the trial of Grif.

4th. Because the court erred in refusing to admit in evidence the record of the written evidence in the case of the State against Grif, after the Solicitor-General had withdrawn all objection to the admission of the record and verdict in said case, and said record and verdict were allowed to go the jury.

5th. Because the court erred in admitting Martha Saddler to testify as to the acts of other persons than defendant, and whose names were not in the indictment, and

Hill (a slave) vs. The State.

against whom in connection with the acts of defendant there was no charge.

6th. Because the court erred in allowing Martha Saddler to testify that defendant struck her with a stick.

7th. Because the court erred in permitting the Solicitor-General to prove by a witness, John Saddler, that he was struck by some one, whom witness did not know, at the time of the killing, and to show to the jury the scar on witness' head received from the blow.

8th. Because the court erred in not entering a *nolle prosequi*, upon the indictment against defendant, before compelling him to testify in the case of the State against Grif.

9th. Because the court erred in holding that the effect of compelling defendant to testify against Grip, was not a *nolle prosequi* as to him on the indictment then pending against him.

10th. Because the court erred in admitting evidence of the acts of any other persons, or the acts of defendant as to other persons than deceased.

11th. Because the court erred in allowing counsel for the State, in his argument before the jury, to assail the position of counsel for the defendant.

12th. Because the court erred in permitting counsel to assail Col. Sims' position, by remarking "that Col. Sims, in his defence of the boy Grif, but the day before, had contended that defendant was guilty and not Grif, and on that trial that Grif was the guilty party and not Hill." No objection made at the time to the remarks of counsel for the State.

13th. Because the court erred in charging the jury, that if they were satisfied that deceased came to her death by violence at the hands of any person, and that killing was murder, and the defendant was present and participating and aiding and assisting in the killing, then he was guilty of murder.

Hill (a slave) vs. The State.

14th. Because the evidence was conclusive that deceased came to her death at the hands and by the acts of Grif, and of Grif only, and defendant could not possibly be guilty.

15th. Because the verdict was contrary to law and the evidence, and without evidence.

The court, after argument, overruled the motion and refused to grant a new trial, and counsel for prisoner excepted.

LYON & CRAWFORD, for plaintiff in error.

Solicitor-General, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

We affirm the judgment of the court below on all the grounds taken in the motion for a new trial. And there is but one which we think requires any comment. Hill was indicted as a principal, and the evidence makes it probable that Griffin struck the blow or blows which killed Mrs. Saddler. Can Hill be convicted under the indictment?

Mr. Justice Foster says, that the identity of the person supposed to have given the stroke is but a circumstance, and a very immaterial one. The stroke of one is considered in law, and on sound reason, as the stroke of all. " *They are all principals in law, and principals in deed.*" And the case which elicited these remarks was this: The indictment charged that A gave the mortal blow, and that B and C were present aiding and abetting, &c.; but on the trial it appeared that B struck and A and C were present, aiding, &c. It was held that this was not a material variance. For that the stroke was adjudged in law to be the stroke of every one; as much so as if all three had held the weapon and had altogether struck the de-

ceased.—(See 1 Phil. on Ev. 4 Amer. Ed. 204; also, note 393, p. 496.)

Considering the participation of Hill in this tragedy, and that whether convicted as principal in the first or second degree, the offence is murder and the punishment the same, we affirm the judgment on this ground as well the rest.

Judgment affirmed.

Benning, J., concurred.

Stephens, J., dissenting.

I did not concur in the judgment in this case, but reserved to myself the privilege of writing a dissenting opinion or not, according as reflection might confirm my objections or remove them. The result is that I feel constrained to adhere to my dissent.

There are two points on which I differ with a majority of the court.

1. They held that under this indictment evidence was admissible over the objection thereto by the defendant, showing that he was guilty, not as principal in the first degree, but as principal in the second degree. The indictment was for murder generally,—that is to say, without any discrimination between principal in the first degree and principal in the second degree,—in effect, therefore, an indictment against the accused as principal in the first degree. I hold, that under such an indictment, no evidence is admissible to show that the accused was guilty as principal in the second degree, or, in other words, that under an indictment against one as principal in the first degree, there can be no conviction of him as principal in the second degree, and of course no evidence admitted showing him to be such. The reason is briefly this: The indictment does not give notice of the nature of the proof, and so, does not afford the accused opportu-

Hill (a slave) vs. The State.

nity to prepare his defence. He comes to trial prepared to meet the case stated in the indictment, but he is met by a different case of which he has had no notice. The only possible mode of escaping from this reasoning is by assuming, as the majority of the court hold, that there is no real difference between the two cases; that principal in the first degree and principal in the second degree are substantially the same. This seems to me to be untenable doctrine. I shall not go into any examination of authorities outside of our Penal Code. I think this settles the question. It defines a principal in the first degree (Cobb's Dig., p. 781,) to be one who is the "actor or absolute perpetrator of the crime;" and a principal in the second degree to be one who does not himself perpetrate the crime, but is present, either actually or constructively, aiding and abetting the other. Why should the Code be so careful to distinguish between them, unless it intended to recognize or to establish a difference? Has the Code made "a distinction without a difference?" Again, the Code (same page) enacts that (except where there is a different provision in particular cases) the principal in the second degree and also an accessory before the fact, shall receive the same punishment as the perpetrator of the crime. If the two principals are substantially the same, where was the necessity for providing *specially* that they should receive the same punishment? Does not the provision imply that *without it* the punishment which is specified for the perpetrator of the crime, would not be applicable to a principal in the second degree? The framers of the Code did a very superfluous thing, unless they believed they had made so clear a difference between the two characters that a principal in the second degree would not be included in a general provision for punishing the perpetrator. Now if he is not included in a provision for punishing the perpetrator, how can he be included in an indictment charging or accusing the perpetrator? If he is not in-

Hill (a slave) vs. The State.

cluded in the one case, he can not be included in the other, and for the same reason in both cases—because he is *not* the perpetrator. A provision for punishing the perpetrator, and an indictment accusing the perpetrator, do not extend to a principal in the second degree, because the term "perpetrator," or any of its equivalents, does not include or apply to a principal in the second degree. Hill is *indicted* as the *perpetrator* of murder—to convict him as principal in the second degree, is to convict him of that which has not been charged against him, and, therefore, I say such a conviction would be inadmissible under such an indictment. There is no analogy between such a conviction, under such an indictment, and a conviction of manslaughter under an indictment for murder. Murder *includes* manslaughter with something else superadded, to-wit: malice. A charge of murder is a charge of manslaughter and more. One convicted of manslaughter under an indictment for murder, is not convicted of what has not been charged against him. A case of manslaughter *falls short* of the charge, but it is directly *in the line of it*, and is therefore admissible. With the element of malice added to it, it would come up to the full measure of the charge. So an indictment for an assault with intent to murder, includes an assault; and there may be a conviction (and of course there may be evidence admitted to procure it) for an assault, under such an indictment. But on principle there could not be a conviction for *battery* under such an indictment, for the charge of battery is not included in a charge of an assault with intent to murder, and to convict of battery would simply be to convict of that which had not been charged. This last instance affords a clear illustration of what I am attempting to illustrate. Now the two sorts of principals in crime are so far from including one the other that they are essentially incapable of being combined in the same person. Neither one of them can possibly be the other.

39

To accuse a man as being the one and convict him as being the other, is simply to charge him with one thing and convict him of another essentially different thing— not different it may be in turpitude nor in punishment, but different in *description, in the circumstances of its identity,* in short, different in the *proof* which supports it. Any indictment which disregards all these differences, and accuses a man as being the perpetrator of an offence, when the true case to be proven under it is that of a principal in the second degree, does not serve the purpose of an indictment, for it does not state the offence to be proven under it, in such a manner as that either the accused or the jury can understand the nature of the offence to be proven. On the contrary, it states a different case, *inconsistent* with the one to be proven, and so *misleads* instead of guiding, lulls the accused into a deceitful security, instead of waking him to preparation. The charge that he is the perpetrator, is an assertion that he is *not* principal in the second degree; and when he comes to his trial he finds that he is to answer for an offence of which the indictment had assured him that he was nor guilty. I do insist that this is worse than no indictment at all. Without any specification of crime, the accused might feel the necessity of reviewing his whole life and of coming prepared as best he could, upon all possible points of attack. Being warned of nothing in particular, he would naturally prepare for everything. But when accused of one thing, while the true intention is try him for another *inconsistent* thing, he has no warning but the *false* one that he need *not* prepare for defence at the only point where the attack on him is to be made. This is deceitful. It would be less cruel and more manly to call upon the accused by one general summons to answer for all the crimes of his life. But I am told that this is all *theory*— that *practically* there is no difference between a principal in the first and second degrees—that "murder is murder"

after all. True, there is no practical difference *after conviction*, for in either case the convict can but die, and die he must. So, too, there is no practical difference, after conviction, between a conviction for murder and a conviction for arson in a town, but I apprehend that *on the trial* of an indictment for arson, the accused would have a very *practical* surprise, if he should be met with proof, not that he had burnt a house, but that he had killed a man. Let me put a case to show the *practical* difference *on the trial* between the two kinds of principals. Let it borne in mind that the "presence" which is necessary to make one a principal in the second degree, may be a constructive presence—he may be a mile from the scene of the perpetration, yet he is construed to be present, if he, at the time, is actively aiding and abetting the perpetrator. Suppose, now, a man is indicted as the perpetrator of murder upon a person named in the indictment. He knows that he is not guilty; he knows that he never was in the presence of the person killed; he knows that the charge can not be sustained without perjury, and he goes to trial feeling that he needs no preparation, and in full reliance that the fact charged can not be proven; that no witness can swear that he perpetrated the crime. It turns out that no witness does swear it; but it is offered to be proven that *another man* perpetrated the crime; that the accused was seen in earnest conversation with the perpetrator near the place and time of the killing; that they parted, the perpetrator going one way and soon after performing the deed of crime, and the accused going another way for a short distance and then stopping in a place sheltered from observation and assuming the attitude of a *watcher*. The accused protests against the admission of this proof and declares that he could explain it all up if he had expected it to come against him—that he knows a witness who overheard the earnest conversation and knows it to have been perfectly innocent, even virtuously indig-

nant; that he parted from the true criminal in anger, and that his attitude of watching was taken, not to aid murder, but to look out for a friend who had promised him a secret and yet an innocent meeting at that spot. What reply could be made to this appeal? The accused tells the court: "I have not come prepared to explain the circumstances which seem to point to me as a confederate of the perpetrator of this crime, for your accusation assured me that I was *not* a confederate, but the perpetrator himself; assured me that I should *not* have to explain any watching at a distance, for that I was *not* at a distance but at the *spot* of murder, doing the deed with my own hands. I have not, in short, come prepared to meet the case you seek to prove, because that case is inconsistent and incompatible with the case you have alleged."

2. The proof in this case clearly and confessedly shows the accused not to have been the *perpetrator* of the crime. He struck no blow upon the deceased, and had nothing to do with her, but was engaged in a scuffle with other persons, while the murderer performed his deed upon a helpless woman. I do not think the proof shows even that the two negroes had any common intent of murder. Their mission was probably one of lust, to be gratified peaceably if possible, forcibly if necessary. The purpose of murder did not probably arise in the mind of the perpetrator himself till it was excited in the heat of the contest with his resisting victim; and is not shown ever to have been in the mind of Hill at any time. He did not *help* the other negro, but was himself engaged with another woman, whom he neither killed nor tried to kill, and who was a witness against him on the stand. The evidence is far from satisfying me that Hill was guilty of murder in either degree, and it is indisputable that he was not principal in the first degree. The verdict is, that he was guilty as principal in the first degree. The verdict, therefore, is against the evidence. The verdict is not the

*truth.* I do not know what more can be said against any verdict, or any better reason for setting any verdict aside; and I think this one ought to have been set aside.