COLLINS v. THE STATE.

1. One indicted as principal merely can be convicted on evidence proving him guilty as principal in the second degree, if the facts be such as that the act by which the crime was perpetrated will, on established principles of law, be imputed to him as committed by himself through the agency of another. In such case, the distinction of degrees is immaterial.

2. Evidence that the witness heard a person jointly indicted with the prisoner on trial say that the prisoner hired him to commit the crime and agreed to give him $50, is hearsay and should have been excluded. The matter embraced in this evidence being no part of a previous conversation to which the witness had testified on direct examination, was not rendered admissible by the fact that such previous conversation had been given in evidence.

3. The foregoing error is cause for a new trial, inasmuch as the evidence strongly indicates that the conviction rests chiefly on a self-criminating fabrication of an alleged accomplice, induced by threats and coercion, and first promulgated under the influence of fear for his life, and probably adhered to afterwards under a like influence, though any ground for reasonable fear had then ceased to exist.

January 11, 1892.

Criminal law. Murder. Principal and accessory. Evidence. Accomplice. Before Judge MILNER. Gordon superior court. February term, 1891.

Reported in the decision.

W. R. RANKIN and DABNEY & FOUCHÉ, for plaintiff in error.

W. A. LITTLE, attorney-general, A. W. FITE, solicitor-general, and W. J. CANTRELL, contra.

SIMMONS, Justice.

Stephen Custer and Rufus Collins were indicted for murder. There were two counts in the indictment. The first count charged them both as principals; the second charged Custer as principal and Collins as accessory before the fact. They severed on the trial, and Collins was tried first and convicted on the first count. He made a motion for a new trial, which was overruled.

1. One of the grounds of the motion relied upon for reversal of the judgment of the court below in refusing to grant a new trial, was, "that the evidence in said case was not sufficient to authorize his conviction on the first count in said indictment, and was insufficient to support the same." It was argued by learned counsel for the plaintiff in error that the evidence showed that Collins was either a principal in the second degree or an accessory before the fact, and he could not, therefore, be convicted upon the first count in the indictment, which charged him with being a principal perpetrator of the crime. Our code (§4305), in defining principals in the first and second degree, says: "A person may be principal in an offence in two degrees. A principal in the first degree is he or she that is the actor or absolute perpetrator of the crime. A principal in the second degree is he or she who is present aiding and abetting the act to be done; which presence need not always be an actual, immediate standing by, within sight or hearing of the act; but there may be also a constructive presence, as when one commits a robbery, or murder, or other crime, and another keeps watch or guard at some convenient distance." The evidence on this point, in brief, is, that Collins, a white man, brought Custer, a negro boy about fifteen years old, from North Carolina to this State as a servant, and that while on their journey to this State, Collins told Custer that he wanted him to kill his (Collins') wife; and after reaching Gordon county in this State, he mentioned the subject to him upon several occasions, promising to pay him $50 if he would kill her, and Custer finally consented; that upon the day of the homicide, Mrs. Collins called Custer to assist her in moving a mattress; that Custer was at that time at a distillery about fifty yards from the dwelling-house where Mrs. Collins was, and as he started to the dwelling-house, he passed Collins, who told him that the pistol

was loaded, to snap it once, and the second time it snapped it would fire; that Custer went to the house, got the pistol from under the head of the bed, snapped it once in the front room, saw Mrs. Collins and snapped it at her, and it fired then as Collins said it would. Collins did not go to the house with Custer, but remained at the distillery or grocery, about fifty yards from the house.

This evidence, if it be true, makes Collins at least a principal in the second degree, if not an " actor, or absolute perpetrator of the crime." He was not actually present in the house where the crime was perpetrated, but he was constructively present—sufficiently near to encourage by his presence the principal actor, and to assist him if assistance should become necessary. Confederacy with the absolute perpetrator of the crime, supplemented by constructive presence, makes one a principal in the second degree. 1 Whart. Crim. Law, §§213, 218, 219; Kerr, Homicide, 110; 1 Bish. Crim. Law, §653; 2 Roscoe, Crim. Ev. p. *752; Desty, Amer. Crim. Law, §37a.

(a) Having shown that Collins was a principal, it is immaterial whether he was a principal in the first or second degree. There is no difference in this State between the punishment of a principal in the first degree and that of a principal in the second degree; and where this is true, it seems now to be well settled that there is no practical or material difference between principals of the two degrees, and a principal in the second degree may be convicted on an indictment charging him as principal in the first degree; in other words, an indictment charging one as principal in the first degree is supported by evidence showing him to be a principal in the second degree. This is especially true if the facts, as in this case, be such as that the act by which the crime is perpetrated would, on established principles of

law, be imputed to him as committed by himself through the agency of another. 1 Bish. Crim. Law, §648; 2 Bish. Crim. Proc. §3; Desty, Amer. Crim. Law, §36a; 2 Roscoe, Crim. Ev. p. *752–3; *Hill* v. *State*, 28 *Ga.* 604; *Leonard* v. *State*, 77 *Ga.* 764; *Ferguson* v. *State*, 32 *Ga.* 658; *McGinnis* v. *State*, 31 *Ga.* 263; *Plain* v. *State*, 60 *Ga.* 284; *Dumas* v. *State*, 62 *Ga.* 58. The principle of the last four cases cited is that where persons conspire together to commit crime, and are present countenancing or aiding it, the act of each is the act of all. The cases of *Washington* v. *State*, 36 *Ga.* 222, and *Shaw* v. *State*, 40 *Ga.* 120, were relied upon by counsel for the plaintiff in error to establish his proposition that a principal in the second degree could not be convicted as a principal in the first degree; but they do not establish his contention. They do not rule that a principal in the second degree cannot be convicted as a principal, but do rule that where a person is indicted as the actor or absolute perpetrator of the crime, he cannot be convicted as a principal in the second degree. In these cases the accused were indicted as principal in the first degree, and the jury found them guilty in the second degree, and the court field that this could not be done.

2. Another ground of the motion complains that the court erred in admitting certain testimony of Miller over the objection of the defendant. Miller testified that he heard Custer say that Collins hired him to kill his wife. This witness had testified as to what Custer told him when he arrested him, about the killing of Mrs. Collins, and that Custer said it was an accident, etc. Upon his cross-examination he was asked if he did not hear Custer say that Collins hired him to kill his wife, and he replied that he did in a subsequent conversation hear Custer make that statement. The record shows that this was not a part of the conversation which Miller had testified to in the direct examination, when he arrested

Custer, but that it was a statement he heard Custer make upon a different occasion. If it had been part of the same conversation to which Miller testified in his direct examination, then of course the State would be entitled to bring out the whole conversation; but as this statement was in another conversation and upon a different occasion, it was clearly hearsay, and the court erred in not excluding it when it was objected to by the defendant on that ground.

3. The error above referred to is sufficient to authorize this court to grant a new trial; and we do so the more readily, because on reading the evidence in the record we are inclined to think that the whole story of Custer may have been a fabrication made by him under the influence of threats and coercion. Johnson, one of the witnesses and the magistrate who held the inquest, testified that he saw Custer upon the night he was caught, and he claimed then that the killing was an accident. This witness said: "I was at Plainville when they were pulling him. They told him to tell how much Collins was to give to him, or they would shoot him. He was badly scared, and he cried after they put him down. I did all that I could to save his life and get them to put him down. I was surprised when he said he was hired to do it, and I never heard of his changing until he was frightened. He stated, after the crowd got hold of him, that he was hired to kill the woman. He said Collins was to give him $50." Custer himself testifies that he "was very badly scared when the crowd had him." We think, in view of these facts, that the testimony of Custer, though self-criminating, may be a fabrication. The record shows that he was an ignorant colored boy about fifteen years old, and that he first said the shot was fired accidentally. He ran off, and after a day or two was apprehended by the witness Miller, who took him to a neighbor's house, where, after

being cautioned to tell the truth, he made the same statement, and gave all the details of the shooting which went to show that it was an accident. The record does not show that he ever made any other statement than that it was an accident, until the crowd took him the next morning and "pulled" him, and threatened to shoot him if he did not tell how much Collins agreed to pay him for killing his wife. He then for the first time said that Collins had hired him to kill her for $50. It is true he adhered to this story on the trial and while under the protection of the court, but if it was a fabrication in the first instance, induced by threats and coercion, it is possible that in adhering to it he may still have been influenced in some degree by the same motives. However that may be, we think from the general countenance of the case that the defendant is entitled to a new trial.                          *Judgment reversed.*