### 3491. MAUGHON *v.* THE STATE.

1. The evidence supports the verdict.

2. "Where A. and B. are present, and A. commits an offense in which B. aids and abets him, the indictment may either allege the matter according to the facts, or charge them both as principals in the first degree, for the act of one is the act of the other, and upon such indictment B., who was present, aiding and abetting, may be convicted, though A. is acquitted."

3. When two are jointly indicted for murder as principals in the first degree, and one is convicted of voluntary manslaughter, and subsequently the other is acquitted, this fact of itself would not entitle the former to a new trial; and this is especially true where the evidence authorized the finding that the act of killing, while actually perpetrated by the one acquitted, was, under legal principles, imputable to the one convicted.

.4. The law applicable to the issues made by the evidence was clearly and correctly submitted to the jury, and the assignments of error to excerpts from the charge are without merit.

DECIDED JULY 25, 1911.

Conviction of manslaughter; from Gwinnett superior court—Judge Brand. May 2, 1911.

*N. L. Hutchins, I. L. Oakes, J. A. Perry, T. J. Shackelford,* for plaintiff in error.

*Clifford Walker,* solicitor-general, *O. A. Nix, W. B. Sloan,* contra.

HILL, C. J. Maughon was jointly indicted with Kelley Elrod for the crime of murder, and on his separate trial was convicted of voluntary manslaughter. His motion for a new trial being overruled, he brings error.

This is the second time this case has been before this court for review, and on the previous occasion we granted a new trial on exceptions to the charge of the court. In the opinion then rendered we made a full statement of the evidence. *Maughon* v. *State,* 7 *Ga. App.* 660 (67 S. E. 842). It is not now deemed necessary to repeat this statement, except in a general way, for the purpose of showing the theories relied upon by the State and the defendant illustrative of the special assignments of error to be considered and determined.

Maughon was a constable. The sheriff of the county asked him to arrest two brothers, Zack and Jake Cleghorn, for whom he held warrants, exhibiting the warrants to Maughon. Complying with the request, Maughon did arrest both of the brothers, telling them that he had warrants against them. They escaped from custody. Subsequently Maughon requested Kelley Elrod to go with him to rearrest the two Cleghorns. They proceeded to the home of the brother-in-law of the two men for whom they were searching, having been informed that they might be found there, and reached there about daybreak Saturday morning. Maughon went to the front door of the house and Elrod to the back door. The brothers were inside this house, and attempted to escape therefrom. The decedent ran to the front door, where he met Maughon, who took hold of his arm and attempted to hold him, and he jerked loose from Maughon and ran out of the door and around the corner of the house, and while running away he was fired on twice, one shot taking effect. While the witness who testified to these facts could not

positively identify either Maughon or Elrod as the party who fired the shot, she was positive that the shots both came from the direction of these two men. Immediately after the two shots were fired, she heard the decedent exclaim: "You have shot me;" and the accused and Elrod ran off. About five minutes after the firing of these two shots, the decedent was found shot, and was dead. In addition to this direct evidence the State proved that the accused, subsequently to the killing, made incriminatory statements substantially as follows: In one of these statements he said that "they [referring to himself and his codefendant, Elrod] shot twice, and at the second shot the decedent hollered." Another statement of this character was that the accused said that two or three shots were fired, and that while he was struggling with the decedent he called out to Kelley Elrod to shoot, and Kelley Elrod shot twice; that Cleghorn had hold of him when Elrod shot the first time; that Cleghorn then turned him loose and ran off about 10 steps; and that Elrod shot at him again and he hollered, and Elrod shot at him again. It will be seen, from this evidence, that the theory of the State was that, while Elrod fired the fatal shot, the two, Elrod and Maughon, were acting jointly, and that Elrod fired the shot in obedience to the request or command of the accused to do so, and that, therefore, as he was aiding and abetting the actual perpetrator of the offense, he was equally guilty.

The defense relied upon was that Maughon did not shoot at all; that when the decedent came out of the door the accused asked him who he was, taking hold of him with his left hand, and telling him to stop, for he was under arrest; that the decedent shoved him off the veranda, and struck him in the face with his fist, and knocked him to his knees, and, when he arose, his pistol being in his overcoat pocket, he attempted to get it, but while he was struggling with the decedent for the pistol he called to Elrod to come around where he was, and, as Elrod came around, he hollered, "Halt! halt!" and fired twice; that Elrod did not fire in the direction of the deceased, but up in the air; that the deceased then broke loose and ran away, and in a few seconds the third shot was fired in the direction in which the deceased ran. He denied the incriminatory statements made by the deceased, and denied that either he or Elrod had fired the fatal shot, and stated that the de-

36

cedent was actually killed by his brother, who fired the third shot under the impression that he was firing at the officers.

The issues, clear cut and simply stated, between the State and the accused, are these: Did Elrod, under the circumstances as proved by the State, fire the fatal shot? If he did so, Maughon was as guilty as he was, being present, aiding and abetting the unlawful act. On the other hand, did the brother of the deceased fire the fatal shot? These conflicting theories are supported by evidence. The question was one for the jury to determine. They solved the problem in favor of the State, accepting the theory that Elrod fired the fatal shot under the order and command of Maughon; but mitigated, however, the theory of the State to the extent of believing that he was acting under a sudden heat of passion on account of the assault made upon him by the decedent, and so found him guilty of voluntary manslaughter.

The law applicable to both the theories of the State and the accused was fairly and clearly presented to the jury in the charge of the court; and, unless there is merit in some of the special assignments of error, this court has no right to disturb the verdict. We will take up the special assignments of error in their order and consider them in the light of the evidence, which has been briefly, but substantially, stated.

The first ground of the amended motion presents the fact that since the conviction of the accused for the offense of voluntary manslaughter, Kelley Elrod, his codefendant, has been tried and acquitted; and it is insisted that as the State contended that the accused was guilty of murder because he was present, aiding and abetting Elrod to shoot the decedent, and since the verdict of the jury in the Elrod case proved the fact that neither Elrod nor Maughon fired the fatal shot that took the life of the deceased, but that the fatal shot was fired by some one else, a new trial should be granted to the accused in order that he might have the benefit of the verdict in favor of Elrod.

Both Maughon and Elrod were indicted as the actual perpetrators of the crime, the indictment containing only the one count, but under this one count it is well settled that either or both may have been convicted as principals in the first or second degree, if the evidence had so authorized; and they could have been convicted either of murder or manslaughter under this count. *Collins* v.

*State,* 88 *Ga.* 347 (14 S. E. 474), and cases cited, especially *Hill* v. *State,* 28 *Ga.* 604; *McLeod* v. *State,* 128 *Ga.* 17 (57 S. E. 83); *Bradley* v. *State,* 128 *Ga.* 20 (57 S. E. 237); *Lewis* v. *State,* 136 *Ga.* 355 (71 S. E. 417). In the case of *Collins* v. *State,* supra, it is held that "one indicted as principal merely. can be convicted on evidence proving him guilty as principal in the second degree, if the facts be such as that the act by which the crime was perpetrated will, on established principles of law, be imputed to him as committed by himself through the agency of another. In such case the distinction of degrees is immaterial." In the case of *Bruce* v. *State,* 99 *Ga.* 50 (25 S. E. 760), it is held that where two persons are indicted for murder, one as principal in the first degree, and the other as principal in the second degree, the latter may be tried and convicted of murder, although the former has been previously tried and convicted of voluntary manslaughter only. In the opinion the Chief Justice cited the following illustration from 1 Starkie on Criminal Pleading (2d ed.), 81: "Where A. and B. are present and A. commits an offense in which B. aids and assists him, the indictment may either allege the matter according to the fact, or charge them both as principals in the first degree; for the act of one is the act of the other. And upon such an indictment B., who was present, aiding and abetting, may be convicted, though A. is acquitted. . . If an indictment for murder charges that A. gave the mortal stroke, and that B. was present, aiding and abetting, both A. and B. may be convicted, though it turn out that B. struck the blow, and that A. was present, aiding and abetting. To go one step further, upon a similar indictment, charging A. as a principal in the first degree, and B. as present, aiding and abetting, B. may be convicted, though A. be acquitted." In *Hill* v. *State,* 28 *Ga.* 604, it is said: "The indictment charged the defendant as a principal. The evidence showed that another inflicted the mortal blow—the prisoner being present, aiding and abetting. Held, that the variance was immaterial; both being principals in law, as well as in deed, and the stroke of one being in law the stroke of the other." See also *Plain* v. *State,* 60 *Ga.* 284; 2 Bishop's New Criminal Procedure, §§ 3, 4.

These decisions, and many others which we might cite, show that from a legal standpoint the conviction of the accused for voluntary manslaughter can be sustained, although the State

claimed that Elrod was the actual perpetrator of the crime, and the jury had acquitted him of this offense. In other words, from a strictly legal standpoint, the acquittal of Elrod was wholly immaterial, and the fact of his acquittal furnishes no legal reason for the acquittal of Maughon. This ruling is both sound and logical. The verdict in the Elrod case, although conclusive as between the State and himself, is not in any sense conclusive of the truth of the transaction. He may have been guilty notwithstanding the verdict of the jury. There may have been reasons in his case, growing out of the inability of the State to produce the same evidence on this trial as on the first, which induced the jury to acquit him, which did not exist in the case of Maughon; but, irrespective of this question, we are simply concerned with the proposition of law that, where two are jointly indicted as principals, the acquittal of one does not in any legal sense inure to the benefit of the other, though it may be a circumstance of exculpation.

The case of _Jackson_ v. _State_, 54 _Ga._ 439, is relied on by learned counsel for the plaintiff in error in support of his position that a new trial should be granted in order that Maughon may have the benefit of the acquittal of Elrod. The _Jackson_ case does not support this contention. In that case Judge McCay, speaking for the court, gives as the reason why Jackson, the principal in the second degree, ought to have a new trial on account of the grant of a new trial to the principal in the first degree, that the record of the conviction of the principal in the first degree had been used on the trial of the other case and may have injured the accused, and that, this record having been expunged by setting the verdict aside, the principal in the second degree ought to have a new trial without this evidence bearing against him. In construing this decision the Supreme Court holds, in the _Bruce_ case, supra, that the principle there announced did not conflict with the holding that the principal in the second degree may be tried and convicted of murder, although the principal in the first degree had been convicted of voluntary manslaughter only. And we say in this case that this principle does not conflict with the enunciation here made that where two are jointly indicted as principals in the first degree, and one is convicted of voluntary manslaughter, and subsequently the other is acquitted, this presents no reason why the verdict of conviction should be set aside and another trial granted. If

Elrod had been convicted as principal in the first degree, and then Maughon had been convicted of voluntary manslaughter or murder, and subsequently the record of Elrod's conviction had been used as evidence against Maughon, and subsequently Elrod was granted a new trial, this fact would justify the grant of a new trial to Maughon. The headnote in the *Jackson* case, supra, is as follows: "When on the trial of A. for murder in the second degree the record of the conviction of B. as principal in the first degree was introduced as evidence, and A. was found guilty as such principal in the second degree, and afterwards B. was granted a new trial, upon which he was found not guilty, held, that A. ought to have a new trial." While, as Judge McCay says in the *Jackson* case, there may be some little confusion in the books as to the use of a verdict of guilty or acquittal of the principal in the first degree on the trial of the principal in the second degree, we think the true distinction is this: Where two men are jointly indicted, one as principal in the first degree, and one as principal in the second degree, the guilt of the principal in the first degree must be established by the State, but the record is not conclusive of that fact, and the conviction or acquittal may be denied, notwithstanding the record, and the verdict simply goes in evidence for what it is worth; but it is not conclusive, and the truth may nevertheless be shown by evidence. The way we look at this case under the evidence, none of this discussion is really material. Here two men were jointly indicted as principals in the first degree. One was tried and convicted of voluntary manslaughter, and the second was tried and acquitted, wholly without reference to the truth of the verdict in the first case, and the only pertinent and material question before us is whether the verdict was authorized by the law, under the evidence in the present case. The law, as we have endeavored to show, authorized a verdict of guilty of voluntary manslaughter, and there is evidence to support such a verdict, although a jury has acquitted the other defendant, Elrod. And the principle announced in the *Jackson* case, which was relied upon by learned counsel for the plaintiff in error, is not at all applicable to the facts of this case, but must be limited entirely to the facts of that case as enunciated in the headnote above quoted. We therefore conclude that the accused is not entitled to another trial on this assignment of error.

Objection is made to the following excerpt from the charge of the court: "A person may be a principal in an offense in two degrees. A principal in the first degree is the actor or absolute perpetrator of the crime. A principal in the second degree is he who is present, aiding and abetting the act to be done. To illustrate, one person participating and attempting to strike is equally guilty with the one who strikes. In other words, if the evidence shows to the jury, to your satisfaction beyond a reasonable doubt, as explained to you, that Elrod fired the fatal shot that killed the deceased, and you further believe that he was told to do so, told to shoot him by Maughon, and he, Maughon, was present, aiding and abetting the act of killing and participating in the act of killing, then he would be just as guilty as Elrod, though he didn't fire the fatal shot. This is just an illustration or explanation of the two degrees of any offense known in law as principals in the first and second degree, and it is not meant on the part of the court, in making this illustration, to express or intimate any opinion whether Elrod fired the shot or not." It is insisted that this charge was inapplicable, misleading, and confusing, since the indictment charged both of the defendants with being the actual perpetrators and joint principals in the murder, there being no charge in the indictment against either as a principal in the second degree, and the contention and theory of the State being that Elrod alone fired the shot that took the life of the deceased; that this charge authorized the jury to return a verdict of guilty of voluntary manslaughter as principal in the second degree, and this would have been erroneous; and, further, that, where a defendant is charged in the indictment as the absolute actor and perpetrator of the crime, he can not be convicted as a principal in the second degree. That portion of the above excerpt where the learned trial judge makes a concrete application of the general principle announced to the facts of this case is especially objected to, it being insisted that there was nothing in the evidence, or in the admissions, as contended by the State, of Maughon, to show that he ever told Elrod to shoot Cleghorn at the time Elrod fired his pistol, and that this was an improper intimation by the court of an opinion that the evidence showed that Maughon told Elrod to shoot the deceased, or to shoot at him; it being earnestly contended by learned counsel that even if this language was used by the accused to Elrod, there

was nothing to show that the language applied to Cleghorn, and that it might reasonably have been inferred from the language that the accused did not mean for Elrod to shoot at the deceased, but meant for him to shoot in the air for the purpose of frightening the deceased in order that he might desist from resisting arrest; that the language of the court as objected to was calculated to impress the jury with the idea that the judge believed that the language of Maughon requesting Elrod to shoot was a direction to him to shoot Cleghorn.

The first objection urged against this charge need not be considered, since the jury did not find the defendant guilty of voluntary manslaughter as principal in the second degree, but did find him guilty as the principal perpetrator of the crime of voluntary manslaughter, which they were fully authorized to do under the indictment. We do not see, however, why the jury could not legally return a verdict in the second degree. While one cannot be convicted as an accessory before the fact to a charge of voluntary manslaughter, because the existence of an accessory presupposes premeditation and preparation, yet we do not see why one could not be convicted as principal in the second degree in the offense of voluntary manslaughter, for one can presently aid and abet a crime which may be committed on a sudden heat of passion, and without premeditation. There is quite a difference in this respect in the offense of an accessory before the fact and that of a principal in the second degree.

The second objection made to this charge is fully answered in the first division of this opinion, where decisions are cited in support of the proposition that one indicted as the absolute actor and perpetrator of the crime could be convicted under such charge as principal in the second degree. The objection urged against the concrete application by the court of the general principles of law to the facts of this case, we think, is without merit. It will be remembered that the theory of the State was that Maughon was guilty because he commanded Elrod to shoot at Cleghorn; that this act made him a principal in the second degree at least; in other words, that the crime actually committed by Elrod was imputed to Maughon as being committed by him through the agency of Elrod, and this made him equally guilty. It was the duty of the court to present this contention of the State to the jury, and in doing so,

to make such intelligent application of the law to the facts proved as would make the contention understood by the jury. Neither is there any intimation that this language of Maughon applied to Elrod. The judge simply told the jury: "If the evidence shows to your satisfaction beyond a reasonable doubt that Elrod fired the fatal shot that killed the deceased, and if you further believe that he was told to do so, told to shoot him by Maughon, and he, Maughon, was present, aiding and abetting the act of killing and participating in the act of killing, then he would be just as guilty as Elrod, though he didn't fire the fatal shot." It was not necessary for the court to charge the converse of this proposition to the jury, for clearly the converse was included in the proposition itself. If they did not believe that Maughon told Elrod to shoot Cleghorn, or that he told him to shoot in the air, or at something else, the jury would have understood, and could have understood, nothing else but that in this latter event Maughon would not be guilty with Elrod. In brief, we think that the charge objected to not only laid down a correct proposition of law, but made a clear hypothetical application to the principal facts of the case, and that the jury could not have reasonably inferred from the language of the judge that the court either entertained or expressed any opinion on the subject.

The following charge of the court on the subject of voluntary manslaughter is objected to: "If you believe, from the evidence, that the deceased, Cleghorn, made an assault, either with his fist or otherwise, upon Maughon, or was attempting to get his pistol to assault him with it, and if you further believe that, smarting under this provocation—and acting under a sudden heat of passion provoked thereby, he, Maughon, ordered Elrod to shoot Cleghorn, and Elrod, acting in pursuance of this request, then and there shot and killed Cleghorn while he was fleeing from them, the killing, under these circumstances, would be voluntary manslaughter; and, if you believe this to be the truth of the case, you would be authorized to find the defendant Maughon guilty of voluntary manslaughter." It is insisted that there is no evidence either on the part of the State or of the defendant to authorize a charge on voluntary manslaughter. The evidence for the State alone or for the defendant alone would probably not authorize a charge on the law of voluntary manslaughter; for if the first was the truth of

the transaction, the accused was guilty of murder; and if the latter was the truth of the transaction, the accused was guilty of nothing, because the killing was not done by him or by Elrod, nor did he participate criminally therein, but it was the result of a shot fired by the brother of the decedent under the impression that he was shooting at the defendants. But the jury in considering the evidence was not compelled to find the truth either in the evidence for the State or in the evidence for the defendant, but they had a right to consider the evidence of both sides in determining the issues presented and in arriving at the truth. To illustrate by the facts of this case: The accused stated in part that the decedent came to the door, engaged in a struggle with him, assaulted him, pushed him off the porch, and attempted to get his pistol. The wife of the decedent testified that her husband was shot by one of the two defendants—which one she did not know, but that the shots came from their direction,—and that, when the second shot was fired, her husband said that he was shot, and she found him in a few minutes thereafter dead. If the jury believed that this evidence of the accused and this evidence of the State was the truth of the transaction so far as it went, and was applicable to the case, and that, smarting from the assault made upon him by the decedent, the accused either shot or ordered Elrod, his companion, to shoot the deceased, and this was done under a sudden heat of passion provoked by the assault thus made upon him, the law of voluntary manslaughter was applicable. Indeed, we think that, taking the evidence altogether, the charge on the law of voluntary manslaughter, as given by the court, was demanded, and that the accused would have had just cause of complaint against the judge if he had not charged the law of voluntary manslaughter just as he did.

The remaining ground of the motion for a new trial is not verified, and is not insisted upon in the brief filed by counsel for plaintiff in error. We have given the case a very careful examination, and we find no error of law, and there is evidence in the record which supports the verdict of voluntary manslaughter.

*Judgment affirmed.*