## 5001.  POPE *v.* THE STATE.

1. One may be convicted as principal in the second degree of the offense of voluntary manslaughter.
2. There being no evidence of any conspiracy or concert of action between the accused and the person who actually committed the homicide, and the evidence not demanding a finding that the deceased came to his death as a result of the wound inflicted by the accused, it was error to refuse to charge the jury the law applicable to the offense of assault with intent to murder, for unless the jury should find that the death of the deceased resulted from a wound inflicted by the accused, he could at most be convicted only of the offense of assault with intent to murder.
3. Except as above indicated the trial was free from material error.

DECIDED OCTOBER 29, 1913.

Conviction of manslaughter; from Jasper superior court—Judge J. B. Park.  May 20, 1913.

*Greene F. Johnson,* for plaintiff in error.

*Joseph E. Pottle, solicitor-general,* contra.

RUSSELL, J.  The plaintiff in error was jointly indicted with one Ollie Roberts for the offense of murder.  The indictment charges both defendants as principals in the first degree.  The accused was found guilty of voluntary manslaughter, and his motion for a new trial was overruled.  The 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 17th, and 18th grounds of the motion raise in various forms the question whether the defendant Pope, as a principal in the second degree, could lawfully be convicted.  It is contended that the evidence did not authorize the instructions to the jury which are complained of in these grounds,—that they give to the State the benefit of a theory to which it was not entitled under the evidence; and it is further insisted that the offense of voluntary manslaughter is of such a nature that one can not be a principal in the second degree in the commission of this offense.

The 12th ground of the motion for a new trial excepts to an instruction of the court upon the law of self-defense, on the ground that the instruction imposed upon the defendant the burden of satisfying the jury that he was acting in self-defense, before they would be authorized to acquit him, whereas the law imposes upon the State the burden of satisfying the jury beyond a reasonable doubt that the defendant was not acting in self-defense at the time he committed the homicide.  In the 13th ground of the motion

complaint is made that the verdict finding the defendant guilty is entirely unsupported by evidence, for the reason that there is no evidence sufficient to authorize the jury to conclude that the defendant fired the shot which took the life of the deceased. In the 15th ground of the motion it is insisted that since there was evidence from which the jury might have inferred that the plaintiff in error was acting independently in shooting at the deceased, and no evidence as to which of the joint defendants inflicted the mortal wound, it was error for the court to omit to charge the jury that if they found from the evidence that he acted independently in shooting at the deceased, and without any concert of action with the other defendant, and without any common purpose with the joint defendant, and there was no evidence of a conspiracy, then he could not be convicted either of murder or of voluntary manslaughter, unless the jury found that the life of the deceased was taken by a wound inflicted by him. In the 19th ground it is insisted that the court erred in failing to give in charge the law of assault with intent to murder, and in omitting to instruct the jury that in the event they believed this offense to have been made out by the evidence, they would be authorized to find the defendant guilty of assault with intent to murder.

As it is not likely that any of the alleged errors assigned in the other grounds of the motion for new trial will recur upon another trial of this case, those grounds will not be considered.

According to the evidence the defendant Pope and the deceased had some words. The evidence is in conflict as to whether the deceased attempted to use a weapon, and as to who really provoked the difficulty. Whether justifiably or not, Pope fired upon the deceased. At about the same time the deceased was fired upon by Ollie Roberts, his codefendant. A large crowd had assembled and a frolic had for some time been in progress, but it does not appear that Pope came to the frolic with Roberts, or that they spoke to each other either before or after they reached the scene of the festivities. There was no evidence that they were intimate or even acquainted with each other. The undisputed evidence discloses that they were not akin, and only one of the defendants participated in the quarrel with the deceased. There is no evidence tending to show that the two defendants participated in a common intent, other than the fact that both fired upon the deceased about the

same time. The deceased came to his death by reason of one of the shots in the mêlée, fired by one or the other of the defendants, but the record does not disclose which gave the mortal wound.

1. We think it is settled that one may be convicted as a principal in the second degree of the offense of voluntary manslaughter. *Maughon* v. *State*, 9 *Ga. App.* 559 (71 S. E. 922). Of course one could not be accessory before the fact of the offense of voluntary manslaughter, because of the fact that the offense is usually committed upon the sudden heat of passion, and there can be no case of voluntary manslaughter where there has been such previous deliberation and premeditation as is necessarily involved in the commission of a crime which is counselled, commanded, and procured. Ex vi termini the whole idea of an accessory before the fact involves predetermination, for the accessory intends to be, and, as a matter of law, must necessarily be, absent from the scene of the crime at the time of its commission. A principal in the second degree, however, is one who is present, aiding and abetting the act to be done, and the same causes which influence the principal in the first degree to be suddenly overwhelmed with the impulse to kill may operate upon a friend or near relative who may be present. Two friends may be traversing together a public highway; one of them may be assaulted by a third person, and, under the sudden impulse of passion engendered in the principal's companion by the natural bias of friendship, he may participate in acts that show participation in the intent to kill which has only instantaneously developed in the mind of his fellow. The human mind operates with such celerity that this is only one of the many illustrations which might be given to show that one in aiding and abetting another to commit a homicide may be mastered by the impulse, and his act may be the result of an intent entertained in common with another although there was no premeditation and no 'conspiracy. The court, therefore, did not err in instructing the jury to the effect that if it be established that the principal in the first degree was guilty of voluntary manslaughter, one shown by proof to be a principal in the second degree may be convicted of the same offense.

The point now before us in its full scope was not before the Supreme Court in *Brown* v. *State*, 28 *Ga.* 199; for the ruling in that case went no further than to hold that one charged with the offense of murder as a principal in the second degree could be convicted

of voluntary manslaughter where it appeared that he participated in
the felonious act, but that as to him the element of malice was
lacking. It is distinctly held in that case that "Presence and par-
ticipation in the act of killing a human being is not evidence, of
consent and concurrence in the perpetration of the act by a defend-
ant charged as aiding and abetting in the killing, unless he had a
felonious design or participated in the felonious designs of the
person killing" (4th headnote). The ruling stated in the 5th
headnote is merely that if one charged with murder in the first de-
gree committed an assault upon the deceased with a deadly weapon,
but the intention of the principal in the second degree was to par-
ticipate in an assault and battery only, with no design to kill, and
without knowledge that the principal in the first degree intended to
use a weapon, the principal in the second degree would be guilty of
manslaughter only. An instruction to the jury that the principal in
the second degree would be guilty of murder if he was connected
with the act of killing was expressly disapproved, upon the ground
that this did not present to the jury for determination the question
whether the defendant was actuated by the intent to kill.

2. Without referring to the several exceptions to the charge of
the trial judge, the real error in the case, to our minds, as pre-
sented by various assignments of error, is that under the evidence
this defendant could not have been convicted of any higher offense
than that of assault with intent to murder, and the judge should
have instructed the jury as to the law of assault with intent to mur-
der, and have charged them that if they believed the accused made
an assault upon the deceased with intent to kill him, the jury would
be authorized to find the accused guilty of assault with intent to
murder, unless it appeared from the evidence that he was justified,
under the rules of law appropriate to that subject, which we will
not elaborate here.

There was no evidence that the shot from this defendant's pistol
struck the deceased, or that the wound which resulted in the death
of the deceased was inflicted by him. Proof upon this point was
essential to his conviction of any grade of homicide, unless the
evidence demanded a finding that he was actuated by an intent
which was shared by his codefendant. Proof that two or more
parties, either with or without a common cause or quarrel, but
acting with a common intent, jointly engaged in the same under-
taking and jointly committed an unlawful act, will charge each of

the participants with liability and responsibility for the acts of all of the others. And this answers the suggestion of the learned counsel for the State that society would be helpless indeed if, when one was assaulted by deadly weapons in the hands of a mob, and killed, there could be no conviction of murder, because it was impossible to show which shot killed the deceased. In such a case as that used for illustration by the State's counsel, proof that one of the mob aided and abetted in the killing would supply evidence of a common intent; but can this be said to be true in a case in which it does not plainly appear that there was any common intent, or any common cause or quarrel, and where, on the contrary, it appears that the defendant was acting independently. It is perhaps true, as insisted by the solicitor-general, that under the record the court might have treated this defendant as a principal in the first degree, but there is not sufficient evidence to make him responsible for the acts of the party indicted with him.

3. The remaining exceptions are sufficiently dealt with in the headnotes.                                    *Judgment reversed.*