CASE 17.—PROSECUTION AGAINST NEWTON REED, NATHAN
        DAY AND EDGAR PATRICK FOR MURDER.—
        March 19.

# Reed v. Commonwealth

Appeal from Morgan Circuit Court.

L. F. JOHNSON, Special Judge.

Defendant Reed convicted of voluntary man-
slaughter and appeals. Reversed.

1. Criminal Law—Principals and Accessories—Conviction of
   Principal.—Ky. Stats., 1903, section 1128, provides that. in all
   felonies, accessories before the fact shall be liable to the
   same punishment as principals, and may be prosecuted jointly
   with principals or severally, though the principal be not taken
   or tried unless otherwise provided.  Held, that where an
   indictment charged that decedent was shot and killed by D.,
   but that defendant and another were present at the time
   and "did aid, abet; unlawfully, feloniously, and of their malice
   aforethought, assist and encourage," D. to do the killing, defend-
   ant might be tried and convicted, though D., the principal in
   the first degree, had been tried and acquitted.
2. Arrest—Necessity of Warrant—Authority of Peace Officer.—
   A peace officer is entitled to make an arrest for misdemeanor
   without a warrant, where the offense is committed in his
   presence and hearing.
3. Homicide—Exercise of Authority—Arrest.—An officer, in
   attempting to arrest one guilty of a misdemeanor, is not justi-
   fied in killing the alleged offender merely to effect the arrest,
   whether the offender be fleeing to avoid arrest or to escape
   from custody; but, in making an arrest for a felony, the officer
   may use such force as is necessary to effect the arrest, even
   to killing a felon when in flight.
4. Same—Instructions.—Decedent, having been arrested for a
   breach of the peace on the morning of the day he was killed,
   was released by the officer on the promise to go home.  He
   went home, and obtained his pistol, and started to return to

Reed v. Commonwealth.

town, stating that the reason he submitted to arrest was because he did not have his pistol. When he arrived in the presence of the officer, decedent shot off his pistol in the street, whereupon the officer summoned a posse, including defendant, all of whom were held up by the decedent, who first shot into the ground toward them, and then shot at them. The posse returned the fire, and endeavored to effect decedent's arrest, during which he was killed. Held, in a prosecution for homicide, that it was error to omit to charge that, after decedent had shot at the posse, he was guilty of a felony, and, if he was shot by one of the posse to prevent his escape or in self-defense, it was excusable.

S. MONROE NICKELL, and ALLEN N. CISCO, attorneys for appellant.

Our contention is that to make a man a principal in the second degree, there must be a principal in the first degree; that is to say, there must be one who does the act or thing, without which there is no crime, and with respect to the doing of which, the other or principal in the second degree was present, aiding and abetting. If there be no principal in the first degree, no one does the act or thing, constituting the crime, there can of course be no principal in the second degree. The principal in the first degree is the one who actually commits the criminal act. By his act he is guilty, without reference to the act of the other, or principal in the second degree; but the principal in the second degree cannot be guilty of crime, unless the principal in the first degree actually perpetrates the act.

### AUTHORITIES CITED.

Blackstone, book 4, 34; Mulligan v. Commonwealth, 84 Ky., 232; Bishop's Criminal Law, vol. 1 sec. 666, sub-sec. 2; Bishop's Criminal Law, vol. 1, sec. 667; 44 L. R. A., 838; 51 La. Ann., 731; Stevens v. Commonwealth, 98 S. W. R., 287.

N. B. HAYS, Attorney General, CHAS. H. MORRIS, attorneys for appellee.

### .POINTS AND AUTHORITIES CITED.

Section 1128, Ky. Stats., reads as follows:

"In all felonies accessories before the fact shall be liable to the same punishment as principals, and may be prosecuted jointly

with principals, or severally, though the principal be not taken or tried, unless otherwise provided in this chapter."

This states entirely the common law rule. Under the section quoted the accessory may be tried and convicted, though the principal be neither taken nor tried. Certainly this statute is broad enough to be said to mean that though the principal be taken, tried and acquitted, yet the accessory, or principal in the second degree (as appellant undoubtedly is) may be tried and convicted. Our statute makes him a principal in the first degree. There is no escape from that proposition.

Certainly the law will not be construed to say that when a person who has committed a misdemeanor is trying to escape by flight, that an officer or member of a posse may ruthlessly shoot him down, while in flight.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Nathan Day, Edgar Patrick, and the appellant, Newton Reed, were jointly indicted by the grand jury of Morgan county for the murder of Charles Frisby. Day was separately tried for and acquitted of the crime charged. The indictment as to Patrick was filed away on motion of the commonwealth's attorney. The appellant, Newton Reed, was accorded a separate trial, which resulted in his conviction of the crime of voluntary manslaughter at the hands of the jury, and their fixing his punishment at confinement in the penitentiary for a period of two years. He was refused a new trial, and by this appeal seeks a reversal of the judgment of conviction.

The indictment charged that Frisby was shot and killed by Day, but that Patrick and appellant were at the time present, and "did aid, abet, unlawfully, feloniously, and of their malice aforethought, assist, and encourage the said Nathan Day to do the killing." As shown by the bill of evidence, the material facts were that Day, as town marshal, had arrested Frisby for disorderly conduct in the forenoon of the day of

the homicide, but released him upon his promise to
go home and behave himself. Frisby then went home,
but returned to the town in the afternoon, and on the
way told a witness, who testified in appellant's behalf
on the trial, that he had submitted to arrest that
morning because he did not then have his pistol, but,
having secured it, he would not again submit to arrest.
In the afternoon he fired his pistol on a street of the
town in view of and about 100 yards from the mar-
shal, Day, and the chairman of the town council. The
latter, claiming authority under the law to act as
judge, ex officio, of the police court in the absence of
the regular judge, who, on that occasion, was out of
town, ordered the marshal, Day, to immediately arrest
Frisby, which he proceeded to do, after summoning
appellant and Patrick as a posse comitatus to assist
him. Upon getting within a few yards of Frisby, and
before attempting his arrest, Day and his posse were
ordered by Frisby, pistol in hand, to stop, which they
did. Day then informed Frisby if he would go home
he would not arrest him. Frisby, instead of prom-
ising to go home, told appellant, who was a little in
advance of the others of his party, to go back, which
he started to do, accompanied by Day and Patrick.
At that juncture, Frisby, who was in the street with
one Keeton, made some exclamation, threw his hat on
the ground, and fired his pistol twice in rapid succes-
sion. The first shot, though in the direction of Day
and his posse, seemed to have been fired by Frisby
in the ground, but the evidence strongly conduced to
prove that the second shot was fired at the marshal
and his posse, all of whom then began shooting at
Frisby, who continued to shoot at them. As the shoot-
ing progressed, the marshal and his posse advanced
upon Frisby, who ran behind a building, followed by

vol. 125—9

appellant; Day and Patrick going on the other side of the building to intercept Frisby. After getting behind the building, Frisby "broke" his pistol, apparently to rid the cylinder of the exploded cartridges and reload it. A bystander, observing this act, called to appellant to run upon and capture Frisby before he could reload his pistol. Appellant attempted to take his advice, but Frisby ran to a fence as if to climb over it and escape through an adjoining lot, seeing which, appellant, as some of the witnesses testified, shot at him twice. About the same time Day and Patrick, who had entered the lot from the other side of the building, also shot at Frisby. When the latter reached the fence he fell, mortally wounded, and in a few minutes died.

Appellant admitted on the witness stand that he shot at Frisby more than once before he ran behind the building, but denied that he fired upon him afterwards. This denial was supported by at least two witnesses introduced in his behalf. Upon this point, however, the evidence was conflicting, for several bystanders testified that appellant did shoot at Frisby after he followed him behind the building, and it is argued in the brief of the assistant attorney general that Frisby was shot and killed by appellant, though it is equally apparent from the evidence that both Day and Patrick shot at him after he ran behind the building. Counsel's contention that appellant fired the fatal shots rests upon the theory that they were received by deceased in the back, and that his back was toward appellant, when, as some of the witnesses stated, the latter shot at him behind the building. There was, however, one fact established by the evidence that apparently militates against this theory, which is that the wounds upon the body of the

deceased seemed to have been made by bullets from a 38 pistol, which was the caliber of the pistols used by Day and Patrick, respectively; whereas, the two pistols used by appellant on that occasion—one in each hand—were of 44 and 45 caliber, respectively.

While there can be no doubt from the evidence that appellant, Day, and Patrick each shot at deceased, it is difficult to determine whether the fatal shots were fired by Day and Patrick, or one of them, or whether they were fired by appellant. It is, however, insisted for appellant that he was only a principal in the sec-· ond degree in committing the homicide, and, in view of the acquittal of Day, named in the indictment as the slayer of Frisby, the jury should have been peremptorily instructed by the trial judge to acquit appellant. This contention is unsound. No better statement of the law on the subject here presented can be announced than is found in Roberson's Kentucky Criminal Law, vol. 1, section 78, wherein it is said: "The distinction between principals in the first and second degree is of no practical importance. All the offenders may be included in the same indictment, which may charge the offense as done generally by all, or specially as done by one and abetted by the rest. Thus, if two or more persons are indicted as the actual perpetrators of a crime, they may be convicted as principals in the first degree, although some of them were merely aiders and abettors. So, when two persons are jointly indicted, the one as principal and the other as aider and abettor, the one charged as principal may be found guilty of aiding and abetting, and the one charged as aider and abettor may be found guilty as principal. This is for the reason that each is the agent and instrument of the other. There is in law but one crime. Hence each, although

peforming different parts, is, in law, a principal, and is criminally responsible for the act of the other, as well as his own act. The aider and abettor may be indicted alone; but, in that case, the indictment must disclose the name of the principal, and give a description of his acts, because the aider and abettor, being a principal of the second degree, cannot be guilty of crime unless the principal of the first degree actually perpetrated the act. Hence, to make a man a principal in the second degree, there must be a principal in the first degree to perpetrate the main fact. One cannot, therefore, be aider and abettor of himself. Two or more persons must act. But if the party indicted as aider and abettor was the perpetrator of the crime, if his act completed it, then, of course, the rule that the indictment must include the principal actor jointly, or disclose who he is, together with a description of his acts, does not apply. The principal in the second degree may be tried before the principal in the first degree. So, the party charged as principal in the second degree may be convicted, though the party charged as principal in the first degree is acquitted."

We find that the doctrine announced by Roberson has been approved by this court in numerous cases. One of the best considered of these is Benge v. Commonwealth, 92 Ky. 1, 13 Ky. Law Rep. 308, 17 S. W. 146. The appellant Benge, Jere Hampton, and others were indicted for the murder of Joseph Bowling by cutting him with a knife; Hampton being charged in the indictment as the perpetrator of the deed, and appellant Benge and the other defendants as aiders and abettors. The facts stated in the opinion are strikingly like those of the case at bar, for they conduced to prove that Benge, though charged as

aider and abettor, actually did the cutting that caused Bowling's death. It was contended by Benge that, inasmuch as he was only indicted as an aider and abettor, the trial court erred in instructing the jury that he might be convicted as an actual perpetrator of the deed. The court, speaking through Judge Bennett, in passing on this objection, said: "This contention is a mistaken view of the law. * * * There is but the one crime charged—that of murder by all the defendants. It is true the prosecution goes upon the theory that the appellant and Jere Hampton committed different parts of the crime; the appellant committing a dependent part, which was not criminal unless the deed itself was actually perpetrated. But, nevertheless, there is in law but one crime charged, and the separate parts performed by each constitute, in legal contemplation, the joint act of all. Each is the agent and instrument of the other. Hence each, although performing different parts, the aider and abettor being a dependent part, is, in law, a principal, and is criminally responsible for the other as well as for his own act. The one charged as principal may be found guilty of aiding and abetting, and the one charged as aider and abettor may be found guilty as principal. This is for the reason that each is the instrument and agent of the other, and his act is the act of the other, and the act of each constitutes but one crime, and each is guilty of the act actually committed by the other. Such act is in law the act of each, although he did not actually perpetrate each act; but the act that the other perpetrated was his act, and he is principal as to it. Now, the actual perpetrator of the deed being the agent and instrument of the aider and abettor for which the latter is criminally responsible, it follows that he is equally responsible.

under the indictment, if he actually perpetrated the deed, instead of the person charged in the indictment to have done so, although he is indicted as aider and abettor only. State v. Putnam, 44 Am. Rep. 569, 18 S. C. 175; State v. Ross, 29 Mo. 37. The Criminal Code of Practice (section 122) provides: 'The indictment must contain a statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended.' Here, the indictment charges in ordinary and concise language the part that the principal and aider and abettor took in the murder; and as each, in law, was principal, and could be convicted under the indictment for doing the acts that the indictment imputed to the other, the indictment is sufficient to authorize the conviction. *    *    * ''

In Evans v. Commonwealth, 12 S. W. 768, 11 Ky. Law Rep. 573, the appellant was jointly indicted with others for the crime of house-burning. The jury were instructed that, if the burning was done by either of the persons indicted with appellant, and he was present aiding or abetting, they should convict him. This instruction was approved by this court, in the following language: ''The indictment charges the accused with the burning. It does not speak of aiding or abetting. If, however, the torch was applied by a codefendant of the accused, and he was then present, aiding and abetting, he was, under our law, a principal, and the indictment therefore authorized such an instruction.''

The authorities supra are fully supported by the following cases: Gaskins v. Commonwealth, 17 Ky. Law Rep. 352, 30 S. W. 1017, 97 Ky. 494; Young v. Commonwealth, 8 Bush 366; Thompson v. Common-

wealth, 1 Metc. 13; Travis v. Commonwealth, 96 Ky. 77, 16 Ky. Law Rep. 253, 27 S. W. 863; Boyd v. State, 17 Ga. 194; Brown v. State, 28 Ga. 216; Commonwealth v. Hargis (Ky.) 99 S. W. 348, 124 Ky. 356. 30 Ky. Law Rep. 510. The opinion in the case of Mulligan v. Commonwealth, 84 Ky. 229, 8 Ky. Law Rep. 211, 1 S. W. 417, does not conflict with any conclusion expressed in the authorities supra. Mulligan was indicted alone for the crime of detaining a woman against her will, with the intent to have carnal knowledge of her. The evidence conduced to prove that the crime was committed by three persons, and more strongly tended to show that the appellant was only an aider and abettor, in view of which this court held that, in order to convict one as an aider and abettor in committing the crime of rape, the principal must be indicted jointly with him, or, if he be indicted alone, the indictment must disclose the name of the principal and give a description of his acts. The opinion in Mulligan v. Commonwealth was also written by Judge Bennett, and in Benge v. Commonwealth, supra, it is referred to and distinguished from that case. In the case at bar, as in the Benge case, the person charged as principal, as well as the aider and abettor, was indicted, and his alleged acts set forth in the indictment, which acts are in law also the acts of the aider and abettor. If, as the evidence conduced to prove, the homicide was actually committed by appellant, indicted as aider and abettor, instead of by Day, named in the indictment as the principal, he only did with his own hand what the indictment charged him with doing by the hand of another, and the acquittal of the alleged principal, even upon the ground that he was not a participant in the homicide,

did not entitle appellant to have the jury peremptorily instructed to acquit him.

Ky. Stats., 1903, section 1128, provides: "In all felonies, accessories before the fact shall be liable to the same punishment as principals, and may be prosecuted jointly with principals, or severally, though the principal be not taken or tried, unless otherwise provided in this chapter." In construing the statute supra, this court said, in Commonwealth v. Hicks, 26 Ky. Law Rep. 511, 82 S. W. 265, 118 Ky. 637: "The very object of the statute is to make the punishment of the accessory entirely independent of the conviction or punishment of his principal." While such is undoubtedly the object of the statute, it is likewise true that, in order to convict an accessory, whether before or after the fact, it is necessary to establish the guilt of the principal. At any rate, this seems to be the conclusion expressed in Begley v. Commonwealth, 82 S. W. 285, 26 Ky. Law Rep. 598, in the opinion of which, after quoting the above statement from Commonwealth v Hicks, supra, it is said: "So in this view of the statute (and we think it susceptible of no other construction), it is clear that the conviction of appellant could not be made to depend on that of the principals, or any of them, or even upon their being in custody, although, in order to convict as an accessory before the fact, it was necessary upon his trial for the commonwealth to establish the guilt of the principals, or some of them, of the crime which he procured them to commit."

The statute was intended to abrogate the rule of the common law which required the principal to be disposed of before the accessory. An accessory is one who is not the chief actor in the offense, nor present at its commission, but is in some way con-

cerned therein, either before or after its commission.
There can be no accessory to a crime, unless the crime
is in fact committed; nor can one be guilty as acces-
sory, unless the principal is guilty.    Hence the statute
does not declare that the accessory may be convicted,
although the principal be not guilty.    It goes no
farther than to say that the former may be prose-
cuted jointly with the principal, or separately, though
the latter be not "taken or tried."    The statute does
not therefore relieve the commonwealth of the duty
of proving the guilt of the principal—the actual per-
petrator of the crime—in order to convict the acces-
sory.    No reason exists, however, for applying this
rule to an aider and abettor, who, unlike the accessory,
is present when the crime is committed, and in addi-
tion makes himself an active participant in its com-
misson.    In such case the aider and abettor is equally
guilty with the one charged as committing the crime.
For, as already stated, each is the agent and instru-
ment of the other.    There is in law but one crime.
Hence each, although performing different parts, is
in law a principal, and is criminally responsible for
the act of the other, as well as his own act.    For
these reasons, the aider and abettor may, as in the
case of the accessory, be tried and convicted before
the principal in the first degree is taken or tried, and
in addition may be convicted, though the principal in
the first degree be acquitted.    If correct in the con-
clusions so far expressed in the opinion (and of their
correctness we have no doubt), it is patent that the
lower court did not err in refusing to give the per-
emptory instruction asked by appellant.    The case
should have gone to the jury upon the evidence intro-
duced by the commonwealth and the appellant,

thereby leaving it to them to decide whether appellant was guilty or innocent of the crime charged.

We have considered the objections urged to the instructions that were given the jury by the court. The instructions are, in some respects, inaptly expressed; but, on the whole, they substantially conform to the law, yet do not contain all the law of the case. Another should have been given defining the duty and powers of Day as a peace officer and of the posse acting with him in attempting to arrest Frisby. According to the evidence, Day was attempting to arrest him the second time that day. There can be no doubt from the evidence but that a few minutes before Frisby was killed he committed a breach of the peace by shooting his pistol in the street. It is useless to discuss the power of the acting police judge who saw the act of lawlessness, or to decide whether he had the right without issuing a warrant for Frisby, to command Marshal Day to arrest him, for the latter had the right as a peace officer to make the arrest without a warrant, and without an order from the acting police judge to do so, as Frisby fired the pistol in his presence and hearing. In view of the turbulent conduct of Frisby throughout the day, the threats that he made against Day for having arrested him in the forenoon, and the fact that he was armed, Day had reasonable ground to apprehend that Frisby would resist a second arrest, and in all probability use his pistol in doing so. Under such circumstances, Day acted properly in summoning appellant and Patrick to assist him to make the arrest. In approaching Frisby, Day used the same forbearance toward him that characterized his conduct throughout, telling him that, if he did not go home peaceably, he would have to arrest him for shooting on the street. Instead of

complying with this reasonable request, Frisby commanded the officer and his posse to halt, and told them to go back.  Believing that Frisby was about to fire on them, Day and his posse started to go away from Frisby, whereupon the latter fired his pistol into the ground, but in the direction of the officer and his posse, and then, according to the weight of the evidence, fired a second shot apparently aimed at them.  Day, Patrick, and appellant then began to shoot at Frisby, advancing upon him as they did so, and he continued to shoot at them, but retreated until he reached the building behind which he ran, and near which he was killed.

In arresting one guilty of a misdemeanor, the officer is never justified in killing merely to effect the arrest, and this is true whether the offender be fleeing to avoid arrest or to escape from custody.  To kill him in either case would be murder, but, under some circumstances, it may amount only to manslaughter, if it appear that death was not intended.  If the officer meet with resistance, he may oppose sufficient force to overcome it, even to the taking of life, provided the offender is resisting to such an extent as to place the officer in danger of loss of life or great bodily harm, and the officer must use no greater force than is reasonably necessary, or apparently so, for his protection, or to prevent the prisoner, if in custody, from effecting his escape by overcoming the officer by violence or force.  But, in making an arrest for a felony, a different rule obtains.  In that event the officer may use such force as is necessary to arrest the felon, even to the extent of killing him when in flight.  This rule also applies to one charged with felony, though he be innocent.  But so highly does the law regard human life that, if a felon can be arrested without the taking

of his life, yet is slain, the killing will not be excusable. In other words, the killing can be done only of necessity, the existence of which is for the jury to determine.    Roberson's Kentucky Criminal Law, vol. 1. section 153; Bishop's Criminal Law, sections 662, 663; Head v. Martin, 85 Ky. 482, 9 Ky. Law Rep. 45, 3 S. W. 622; Dilger v. Commonwealth, 88 Ky. 550, 11 Ky. Law Rep. 67, 11 S. W. 651; Doolin v. Commonwealth, 95 Ky. 29, 23 S. W. 663, 15 Ky. Law Rep. 408; Bowman v. Commonwealth, 96 Ky. 8, 27 S. W. 870; Fleetwood v. Commonwealth, 80 Ky. 1, 3 Ky. Law Rep. 497; Mockabee v. Commonwealth, 78 Ky. 380; Stevens v. Commonwealth (Ky.) 124 Ky. 32, 98 S. W. 284, 30 Ky. Law Rep. 290.

The court should therefore have given an additional instruction embodying the principle referred to, because what would have justified Day, the officer, in shooting or killing Frisby, would amount to justification to appellant as a member of his posse.    While the original offense for which the attempt to arrest Frisby was first made was merely a misdemeanor, yet, when he shot at the officer and his posse, as they approached him, or rather as they were leaving him at his command, he became guilty of a felony, to arrest him for which they had the right to use such force as was reasonably necessary, as well as to exercise the right of self-defense.    And if, under these circumstances, and in order to effect his arrest, the officer or appellant, as a member of his posse, shot and killed Frisby while trying to escape, it was excusable in law.    The failure, therefore, of the court to give such an instruction as we have indicated, was necessarily prejudicial to appellant, and doubtless prevented him from having a fair trial.

For the reasons indicated, the judgment is reversed,

and cause remanded for a new trial and further pro-
ceedings consistent with the opinion.    Whole court
sitting.