111 So.2d 728 (1959)
STATE of Florida, Appellant,
v.
Joseph Alexander PEEL, Jr., Appellee.
No. 397.
District Court of Appeal of Florida. Second District.
April 29, 1959.
Richard W. Ervin, Atty. Gen., David U. Tumin, John C. Reed, Asst. Attys. Gen., for appellant.
*729 Sidney J. Catts, Jr., Hal S. Ives, West Palm Beach, J. Frank Maynard, Jr., Lake Park, for appellee.
ALLEN, Judge.
This is an appeal by the State from an order granting a motion to quash an information. The appellee, Peel, was charged with being a principal in the second degree in an assault with intent to kill one, Harold Gray, by another, Floyd Albert Holzapfel. Holzapfel had previously been indicted for such assault, and upon trial, he had been found not guilty. Peel then was charged as above mentioned and he moved to quash the information on the ground that Holzapfel had been found not guilty by reason of acting in self-defense and that, under applicable law, his alleged accomplice could not thereafter be tried on the above mentioned charge.
The information against Holzapfel was filed in December, 1956, and the information in the present case against Peel was filed July 3, 1957. The defendant's supplemental motion to quash was granted by the court on November 13, 1957. The State filed a petition for rehearing on defendant's supplemental motion to quash on the ground that the record of the Holzapfel case did not definitely show that the jury based their not guilty verdict on the defense of self-defense.
The lower court, in passing on the motion to quash, based its decision on the case of Kelley v. State, 1920, 79 Fla. 182, 83 So. 909, 16 A.L.R. 1465, stating:
"* * * It has been cited with approval in the Heisler (sic) against State, which case has been referred to and it also has been cited in other jurisdictions. The Court is of the opinion, and in this I have no doubt, that the Kelly (sic) Case enunciates the law of the State of Florida and whether it be a good law or a bad law, it is not for this Court to say, and my ruling is based upon the law as enunciated in Kelly (sic) against State and as approved in the case of Heisler (sic) against State and based on those two decisions the Motion to Quash will be granted."
The information involved in this case is as follows:
"In the Criminal Court Of Record, of the County of Palm Beach and State of Florida, July Term, in the year of our Lord, one thousand nine hundred and Fifty Seven.
State of Florida Information for
 vs. Principle (sic) in
Joseph Alexander the second decree to
 Peel, Jr. assault with intent
 to kill.
"In the Name and by Authority of the State of Florida:
"Charles A. Nugent, Jr. County Solicitor for the County of Palm Beach, prosecuting for the State of Florida in the said County, under oath information makes that Floyd Albert Holzapfel of the County of Palm Beach and State of Florida, on the 12th day of December in the year of our Lord, one thousand nine hundred and fifty six in the County and State aforesaid, with a certain deadly weapon, to-wit: a black jack, pistol or other blunt instrument, a better and more particular description of which is to the County Solicitor unknown, which he then and there had and held in and upon one Harold Gray, with a premeditated design and intent to then and there unlawfully kill and murder the said Harold Gray, then and there an assault did make, and did then and there beat, bruise, wound and ill-treat the said Harold Gray, and Joseph Alexander Peel, Jr., of the County of Palm Beach, State of Florida, at the time of the committing of the felony aforesaid, to-wit, on the 12th day of December, 1956, in Palm Beach County, Florida was then and there *730 unlawfully and feloniously present, and did unlawfully and feloniously aid, abet, and otherwise procure the said Floyd Albert Holzapfel to do and commit the said felony, in the manner and form aforesaid, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Florida.
 Charles A. Nugent, Jr. /s/
 County Solicitor,
 Palm Beach County, Florida."
In the case of Kelley v. State, supra, Charles Kelley and Russell Kelley were jointly indicted and tried for murder, and Russell Kelley was acquitted, and Charles Kelley was convicted of murder in the second degree. The Supreme Court, in its opinion, shows the following basic facts: Charles and Russell Kelley drove to a home where Register was visiting. There seems to have been bad feeling on the part of Register toward Charles Kelley, of which Kelley apparently had no knowledge until the night before. When he drove up to the home he was met by a Mr. or Mrs. Fox, who urged him to go away and he asked Mrs. Fox to tell Register to come out. Subsequently Register came out and Charles Kelley and he walked down the road where Kelley cursed Register and a fight was instigated. Both the Kelleys stated that Charles Kelley told Register that if he had done anything he was willing to apologize and Register replied that he didn't want apologies. A fight ensued, after which the parties separated and Register walked back to the gate through the yard and into the house while Charles Kelley walked back to his buggy. Charles Kelley was the father of Russell Kelley who was 17 years old at that time. Register was safely back within the precincts of the house and neither of the Kelleys followed him in. The undisputed testimony showed that Register was deliberate in getting his gun and going back to engage in another affray. He got his gun and went out towards Kelley. There was some dispute as to who was the aggressor in the second affray, but Charles Kelley was shot in the face and when he threw up his gun he was shot in the hand by Register. Charles Kelley handed his gun to his son, Russell Kelley, and Register at once shot at Russell, who returned the fire. Russell Kelley's second shot struck Register, causing him to fall to the ground. From the effects of this wound he died. All of the testimony showed that it was the shot last fired by Russell Kelley, the son, which killed Register.
The circuit judge charged the jury that before Russell Kelley could be convicted, they must find from the evidence that he acted of his own volition and not by direction and because of a fear of his father, and that an unlawful act committed by the child in the presence of the father and at his direction, because of the criminal intent of the father and not because of the wrong of the child, is the crime of the father and not of the child. The Supreme Court said [79 Fla. 182, 83 So. 911]:
"This charge submits to the jury as an issue of fact whether or not Russell Kelley shot by direction of his father, or because of fear of him, although there was absolutely no testimony from which the jury could find or even infer that the son was directed by the father to shoot Register, or that Russell shot him because of fear of his father. There being no testimony upon which this charge could be predicated, it was harmful error."
The Court then commented that the charge was wrong in this particular case in that the principle announced was wrong under the facts. The Court then said:
"We can readily see how this charge induced the remarkable verdict in this case, where the son who fired the fatal shot was acquitted, and the father convicted of murder in the second degree.
"The verdict of acquittal of Russell Kelley could only have been reached by the jury upon one of three hypotheses:

*731 "(1) That if Russell Kelley killed Register, he shot in self-defense.
"(2) That the fatal shot was fired by Charles Kelley, and not by Russell Kelley.
"(3) That his father told him to shoot Register, and he was therefore guiltless of any offense.
"We dismiss the last hypothesis, because it has no support in the testimony, and is not sound in law. Not a single witness testified that Charles Kelley, when he handed the gun to his son, told him to shoot Register, or gave him any directions or instructions, or made any request of him whatsoever.
"The verdict could not have been predicated upon the second hypothesis, as the testimony seems to establish very clearly by the witnesses for the state as well, as for the defense, that Russell Kelley fired the fatal shot.
"This brings us to the first hypothesis, that Russell Kelley killed Register in self-defense. The testimony fully establishes this to be the case, and we can reach no other conclusion than that the jury acquitted Russell Kelley upon the ground that his life was in imminent peril, and if he had not killed Register he was in immediate danger of being killed by him, and this too without his having been an aggressor in any way, or having sought or provoked the affray or took part in any difficulty that may have occurred between his father and Register. * * * The verdict then presents this remarkable situation: Russell Kelley, assaulted by Register with a deadly weapon, shots (sic) and kills him in self-defense, and Charles Kelley is convicted of murder in the second degree for being present, aiding and abetting his son in committing a justifiable homicide.
"It seems quite clear that the jury acquitted Russell Kelley on the ground that he killed Register in self-defense, and, that being so, Charles Kelley could not be lawfully convicted of any offense predicated upon his being present, aiding and abetting his son in committing a justifiable homicide."
In the case of Hysler v. State, 1939, 136 Fla. 563, 187 So. 261, 262, a petition for habeas corpus was brought by Clyde Hysler against the State of Florida to withhold execution of the death penalty under a murder conviction. The facts, as shown in the opinion of the Court, were that the petition of Clyde Hysler was based, among other grounds, on the assertion that Hysler was convicted as a principal in the second degree and his conviction was affirmed by the Court, but that the principal in the first degree had not been convicted. The indictment in question was brought on two counts. The first count charged Hysler as a principal in the first degree, or an accessory before the fact, and the second count charged him as a principal in the second degree. In either event, he was a principal. The jury found him guilty of murder in the first degree. The Court, in its opinion said:
"The evidence, if believed, was ample to convict him as principal in the second degree or as accessory before the fact under Section 7110, Compiled General Laws of 1927, [F.S.A. § 776.01]. Whether he was principal in the first or second degree or accessory before the fact is immaterial in so far as the punishment visited on him was concerned. The statute here quoted makes the principal in the first or second degree guilty of a substantive felony and if it be the principal in the second degree it makes no difference whether the principal in the first degree has been convicted or not, or whether he is amenable to justice or not. Lake v. State, 100 Fla. 367, 129 So. 834; McCall v. State, 120 Fla. *732 707, 163 So. 38; In re Vann, [136 Fla. 113] 186 So. 424, opinion filed January 14, 1939.
"I have examined the cases relied on by petitioner, Kelley v. State, 79 Fla. 182, 83 So. 909, 16 A.L.R. 1465; Flynn v. State, 86 Fla. 467, 98 So. 76; State ex rel. Maudlin v. Hardie, 114 Fla. 374, 154 So. 183. These cases hold that conviction and punishment of the principal must be done at the same time or must precede the conviction and punishment of the accessory. This doctrine is still in force in this state and what has been said here in no sense militates against it.
"A principal in the first or second degree or an accessory before the fact is different from an accessory after the fact and we have retained that distinction in this State. We are not here confronted with an accessory after the fact but with a principal in the second degree and the statute makes him guilty of a substantive felony. It is not material that the principal in the first degree be first apprehended and tried."
In the above opinion the court grouped Kelley v. State, supra, with the cases of Flynn v. State, supra, and State ex rel. Maudlin v. Hardie, supra. The case of Flynn v. State, supra, involved the conviction of an accessory before the fact when there was no showing that the principal had been convicted, which was the case in State ex rel. Maudlin v. Hardie, supra. While the above three cases were grouped together, Kelley v. State did not involve an accessory but a principal.
Persons who in some manner are responsible for the commission of a felony are classed as principals in the first degree, principals in the second degree, and accessories before the fact. Accessories after the fact represent a distinct class by virtue of their protection or assistance to one who has committed a crime. 9 Fla. Jur. Criminal Law § 38.
Principals in the first degree or second degree are guilty of a substantive felony and so far as concerns the prosecution of the principal in the second degree it makes no difference whether the principal in the first degree has been convicted or is amenable to justice. In Skipper v. State, 1942, 150 Fla. 259, 7 So.2d 128, the Supreme Court stated a contention that a conviction of the persons charged as principals was essential to sustain the validity of a judgment entered against a person charged as being present aiding and abetting the commission of the crime was without merit.
Under the common law the conviction of the principal felon had to precede or accompany that of one charged as being an accessory before the fact. Kauz v. State, 1929, 98 Fla. 687, 124 So. 177. Florida Statutes, Section 776.01, F.S.A. provides that one who aids in the commission of a felony, or is accessory thereto before the fact, by counseling, hiring, or otherwise procuring such felony to be committed, is subject to the same penalty prescribed for the principal felon and may be charged and convicted as an accessory before the fact either with the principal felon or after his conviction, or may be indicted and convicted of the substantive felony, whether the principal has or has not been convicted or is or is not amenable to justice.
It the accessory is indicted in the common-law mode the common-law rules control the trial of the accessory, and conviction of the principal is an essential prerequisite to the guilt of the accessory. Neumann v. State, 1934, 116 Fla. 98, 156 So. 237; Latham v. State, 1924, 88 Fla. 310, 102 So. 551. If the accessory before the fact is indicted for the substantive offense, he may be convicted of the crime charged and his guilt or innocence is not dependent on or affected by that of the principal in the first degree. In such cases the substance of the issue is whether the person is guilty of the crime charged, whether as *733 principal in the first degree or second degree, or as an accessory before the fact. And the fact that such person is indicted with another does not affect the issue on which such person is tried, since guilt is not dependent on the conviction of the other. Johnson v. State, 1914, 68 Fla. 528, 67 So. 100
In the case of Skipper v. State, 1942, 150 Fla. 259, 7 So.2d 128, 130, the information charged Richter and Armstrong with the crime of breaking and entering a certain building to commit a felony, to-wit: grand larceny, and alleged that H.L. Skipper was then and there present at, and before, the commission of said felony and aided and encouraged Richter and Armstrong to commit the felony. H.L. Skipper entered a plea of guilty and Richter and Armstrong, after being tried before a jury, received a verdict of not guilty. Skipper moved to withdraw his guilty plea, which was denied. The Supreme Court, in its opinion, held that the language of the information charged Skipper as a principal in the second degree, and that it was discretionary with the trial court which of the principals should be tried first. The Court stated:
"The principle enunciated in McCall v. State, 120 Fla. 707, 163 So. 38, 43, is illustrative and is, viz.:
"`It is well settled that where an indictment charges two persons with the crime of unlawful homicide, one of them being charged as principal in the first degree and the other as principal in the second degree, the person charged as principal in the second degree may be put on trial and may be convicted before the trial of or the conviction of the principal in the first degree, and this may be done although the principal in the first degree has been acquitted of the charge. See Rooney v. United States, 9 Cir., 203 F. 928, 122 C.C.A. 230 * * *.'
"The legal effect of the information drawn under Section 7110, C.G.L. [F.S.A. § 776.01], as quoted supra, is to make H.L. Skipper, the appellant here, a principal. * * * The contention that a conviction of Richter and Armstrong, the other principals informed against, is essential to sustain the validity of the judgment entered against the appellant Skipper is without merit."
Volume 1 of Wharton's Criminal Law and Procedure (Anderson) (1957) § 116, page 253, says:
"As a general rule it is held that the fact that a person charged with the actual perpetration of a crime as principal in the first degree has been tried and acquitted presents no impediment to the trial and conviction of a person charged with aiding and abetting the commission of the crime." Florida  Compare Kelley v. State, 79 Fla. 182, 83 So. 909, 16 A.L.R. 1465; IIb.
The Supreme Court of Iowa in the case of State v. Lee, 91 Iowa 499, 60 N.W. 119, 120, held that where two defendants were jointly indicted as principals for murder in the first degree, the conviction of the principal in the first degree of a murder in the second degree did not prohibit the trial of the other principal on the information. The Court, in its opinion, said:
"The defendant and Hansen were jointly indicted for the crime charged, and Hansen was first tried, and was convicted. The defendant pleaded in writing that he was not guilty; that Hansen was the principal in the shooting, and had been tried and convicted of the crime of murder in the second degree; and that the defendant could not be placed on trial for a crime of a degree higher than manslaughter; and that he objected to being so tried. The objection was disregarded, and he was tried for the crime of murder in the first degree. * * * It also charges that the wound which caused his death was inflicted with the intent to kill him, by Hansen, and that the *734 defendant was present aiding and abetting. We are of the opinion that the indictment charges the defendant as a principal, and not merely as an accessory; and this is true, not because the statute of this state has abolished the distinction between an accessory before the fact and a principal, but for the reason that the facts charged show that he was present, and actively engaged in the assault with intent to commit murder, and that he aided Hansen to fire the shot which took the life of Lochner. See 1 Whart.Cr.Law, § 220. It is said that the indictment shows that the defendant could not have been guilty of an offense of a higher degree than that committed by Hansen; that he was acquitted of the crime of murder in the first degree; and that his acquittal necessarily operated as an acquittal of the defendant of that offense; therefore, that it was error to put him on trial for it. Authorities are cited by appellant to sustain this claim; but an examination shows that most, if not all, of them, merely announce the common-law rule that an accessory before the fact cannot be convicted unless the principal has been convicted previously, or is tried and convicted with the accessory, and that in such case the acquittal of the principal operates to acquit the accessory. See McCarty v. State, 44 Ind. 214; Bowen v. State, 25 Fla. 645, 6 So. 459. That rule has no application under a statute which makes the crime of the accessory substantive and independent. 1 Whart. Cr.Law, § 237. * * * Hence, had the indictment shown that the defendant was charged with acts which would have made him an accessory at common law, he would have been indicted and tried as a principal, without regard to the conviction of one who, at common law, would have been a principal. The facts charged show that the defendant was not merely a common-law accessory before the fact, but that he was present, armed with deadly weapons, and participated in the assault with the intent to commit murder, and that he aided and abetted in the firing of the shot which caused the death of Lochner. The guilt of defendant did not necessarily depend upon the guilt of Hansen, and the acquittal of the latter of the crime of murder in the first degree did not operate to acquit the defendant of that offense. We are of the opinion that he was rightly placed on trial for it."
In State v. Wilson, 1945, 236 Iowa 429, 19 N.W.2d 232, the Supreme Court of Iowa held that where a principal in the first degree and a principal in the second degree in the same offense have separate trials, judgment against one, whether of conviction or of acquittal, has no bearing upon a judgment against the other.
The facts, as set forth in the opinion in State v. Wilson, supra, were that three brothers, Albert, Glenn and Clarence Wilson, were indicted jointly by the grand jury for the crime of murder with the specific intent to kill one Harry Bolden. They were tried separately. Glenn was found guilty of murder in the first degree. The judgment was reversed. State v. Glenn Wilson, 234 Iowa 60, 11 N.W.2d 737. Glenn was tried on the charge of manslaughter and acquitted by the jury on December 6, 1944 because he killed in self-defense. Albert was tried for murder on February 4, 1943, and was found guilty of manslaughter. Clarence was later tried and on April 2, 1943, was found guilty of manslaughter and on his appeal the judgment was reversed. See State v. Clarence Wilson, 235 Iowa 538, 17 N.W.2d 138.
The appellant, Albert Wilson, in State v. Wilson, supra, asked for reversal because of two errors of the court, the first being the court's refusal to permit him to offer evidence of the general reputation of the deceased as a quarrelsome man. The second error alleged was the admission by the court of certain oral declarations *735 of Glenn Wilson, and also his written statement, setting out his participation in the killing of Bolden and matters leading up to it. All of these statements were made after the homicide and not in the presence of Albert Wilson.
The Iowa Supreme Court reversed the conviction of Albert Wilson on the grounds of the improper admission and refusal to admit certain testimony. The Court, in its opinion, said on page 239 of 19 N.W.2d:
"The admission of this testimony was especially important to the appellant, and for that reason its rejection was especially prejudicial to him. For if the homicide was justifiable because Glenn struck in self-defense, no crime was committed, and Glenn was guilty of none. Necessarily, the appellant, who the state charges aided and abetted Glenn, could be guilty of no crime in so doing. There is no question in law or logic on this point. See State v. Clarence Wilson, supra, 17 N.W.2d 138, 142, and authorities cited; State v. Phillips, 24 Mo. 475; Pizana v. State, 81 Tex.Cr.R. 81, 193 S.W. 671, 672; 29 C.J. 1072, § 44; 40 C.J.S. Homicide, § 9; Harper v. State, 83 Misc. 402, 35 So. 572; Davis v. State, 107 Tex.Cr.R. 315, 296 S.W. 895, 896. In State v. Leeper, 199 Iowa 432, 442, 443, 200 N.W. 732, 736, the defendant was tried for aiding and abetting Mrs. Wertz to commit the murder. In reversing a judgment of conviction, the court said: `She testified that she fired the fatal shot. The court correctly instructed, in substance, that, if the jury found that Mrs. Wertz killed the deceased, it must be further established beyond a reasonable doubt that she did not do so in justifiable self-defense, before the appellant could be convicted as an aider and abettor.' (Italics ours.)
"If there should be a retrial of this case, and the jury should find that Glenn Wilson killed the deceased in self-defense, it would be the duty of the jury to acquit this appellant.
"The fact that subsequent to the trial of appellant Glenn was acquitted of the killing of Bolden on his defense of self-defense has been called to the attention of the court on this appeal and has been commented on by both sides. Appellant states that because thereof this appellant has been adjudicated not guilty and that the state should make application for a reversal of the judgment against appellant. The contention of appellant as to the adjudication has been urged by others and there is an interesting discussion of that view in the dissenting opinion in Roberts v. People, 103 Colo. 250, 87 P.2d 251, 258-260, but the law is to the contrary, as held by this court in State v. Clarence Wilson, supra, 17 N.W.2d 138, 140, 141. Many authorities support the rule that where a principal in the first degree and a principal in the second degree in the same offense have separate trials, the judgment against one, whether of conviction or of acquittal, has no bearing upon a judgment against the other. See authorities cited in State v. Clarence Wilson, supra, also People v. Frye, 248 Mich. 678, 227 N.W. 748; State v. Gifford, 19 Wash. 464, 53 P. 709; Maughon v. State, 9 Ga. App. 559, 71 S.E. 922, 924; Reed v. Com., 125 Ky. 126, 100 S.W. 856; State v. Martino, 27 N.M. 1, 192 P. 507, 508, 509; Rooney v. United States, 9 Cir., 203 F. 928. The judgment acquitting Glenn is neither res judicata in bar of the prosecution of Albert nor is it an estoppel to relitigating the issue of Glenn's self-defense. Kunkel v. Eastern Iowa L[ight] & Power Co-op., 232 Iowa 649, 656 et seq., 5 N.W.2d 899."
In Porter v. State, 1946, 200 Ga. 246, 36 S.E.2d 794, 800, the Court, in its opinion, said:

*736 "* * * Where a principal in the first degree has not been convicted, in an indictment charging another person jointly with him as principal, there could be no truthful allegation of prior conviction of a principal in the first degree because obviously he could not be convicted before indictment. Since the State's proof is never required to go beyond the allegations of the indictment, the law does not demand, in order to sustain a conviction of a principal in the second degree, either an allegation in the indictment or evidence of the conviction of the principal in the first degree. However, where one is indicted as a principal in the second degree it is positively required that an allegation and proof of the guilt of the principal in the first degree be made. This requirement does not spring from some insubstantial legalistic theory, but it is a simple and just demand that the basic crime be fully charged and proved, since the fact of the guilt of the principal in the second degree necessarily depends upon the guilt of the principal in the first degree. Whether the principal in the first degree be convicted or acquitted, can not in the remotest extent diminish the demand of the law and of society that the principal in the second degree be convicted if the evidence shows him guilty. Though the principal in the first degree may subsequently be acquitted by a jury, in spite of the fact that the evidence authorizes a verdict of guilty, this failure of justice would not render unjust or regrettable the previous conviction of the principal, in the second degree where that conviction is sustained by evidence. His evil design and criminal conduct are condemned and punished by the law, and his offense is unmitigated and society is no less injured by his acts because the principal may himself escape conviction. Thus it should be clear that, in order to convict a principal in the second degree, reason and justice could demand no more than that the indictment charge and the evidence show the guilt of the principal in the first degree. The law requires no more."
In Aston v. State, 1938, 136 Tex.Cr.R 12, 122 S.W.2d 1073, 1074, the Court, in its opinion, said:
"In his charge the court failed to instruct the jury that they must believe beyond a reasonable doubt that the principal was guilty. It appears that the principal had theretofore been convicted of the offense of assault with intent to murder. The charge of the court merely required the jury to find that he had been convicted of such offense. To warrant a conviction of the accomplice the guilt of the principal must be shown. Gibson v. State, 53 Tex.Cr.R. 349, 110 S.W. 41. Stated in another way, to authorize a conviction of one as an accomplice `the state must prove the commission of the offense by the principal to the same certainty as if the principal were on trial, and therefore beyond a reasonable doubt.' (Citations omitted.) The accomplice may contest the guilt of the alleged principal. McKinley v. State, 104 Tex.Cr.R. 65, 282 S.W. 600. The fact that the principal had been convicted would not have prevented the appellant from seeking to show that he (the principal) was not guilty. It follows that the charge of the court was erroneous."
In Maughon v. State, 9 Ga. App. 559, 71 S.E. 922, Maughon was jointly indicted with Kelley Elrod for the crime of murder, and on his separate trial was convicted of voluntary manslaughter.
The second and third head-notes in Maughon v. State, supra, set out the law of the case, to-wit:
(2) "`Where A. and B. are present, and A. commits an offense in *737 which B. aids and abets him, the indictment may either allege the matter according to the facts, or charge them both as principals in the first degree, for the act of one is the act of the other, and upon such indictment B., who was present, aiding and abetting, may be convicted, though A. is acquitted.'
(3) "When two are jointly indicted for murder as principals in the first degree, and one is convicted of voluntary manslaughter, and subsequently the other is acquitted, this fact of itself would not entitle the former to a new trial; and this is especially true where the evidence authorized the finding that the act of killing, while actually perpetrated by the one acquitted, was under legal principles, imputable to the one convicted."
The Court, in its opinion, in Maughon v. State, supra, said:
"The first ground of the amended motion presents the fact that since the conviction of the accused for the offense of voluntary manslaughter Kelley Elrod, his codefendant, has been tried and acquitted, and it is insisted that as the state contended that the accused was guilty of murder because he was present, aiding and abetting Elrod to shoot the decedent, and since the verdict of the jury in the Elrod Case proved the fact that neither Elrod nor Maughon fired the fatal shot that took the life of the deceased, but that the fatal shot was fired by some one else, a new trial should be granted to the accused in order that he might have the benefit of the verdict in favor of Elrod.
"Both Maughon and Elrod were indicted as the actual perpetrators of the crime, the indictment containing only the one count, but under this one count it is well settled that either or both may have been convicted as principals in the first or second degree, if the evidence had so authorized, and they could have been convicted either of murder or manslaughter under this one count of the indictment. Collins v. State, 88 Ga. 347, 14 S.E. 474, and cases cited, especially Hill v. State, 28 Ga. 604; McLeod v. State, 128 Ga. 17, 57 S.E. 83; Bradley v. State, 128 Ga. 20, 57 S.E. 237; Lewis v. State, [136 Ga. 355] 71 S.E. 417, decided May 12, 1911, by the Supreme Court of Georgia. In the case of Collins v. State, supra, it is held that `one indicted as principal merely can be convicted on evidence proving him guilty as principal in the second degree, if the facts be such as that the act by which the crime was perpetrated will on established principles of law be imputed to him as committed by himself through the agency of another. In such case the distinction of degrees is immaterial.' In the case of Bruce v. State, 99 Ga. 50, 25 S.E. 760, it is held that where two persons are indicted for murder, one as principal in the first degree, and the other as principal in the second degree, the latter may be tried and convicted of murder, although the former had been previously tried and convicted of voluntary manslaughter only. * * * These decisions, and many others which we might cite, show that from a legal standpoint the conviction of the accused for voluntary manslaughter can be sustained, although the state claimed that Elrod was the actual perpetrator of the crime, and the jury had acquitted him of this offense. In other words, from a strictly legal standpoint, the acquittal of Elrod was wholly immaterial, and the fact of his acquittal furnishes no legal reason for the acquittal of the accused. This ruling is both sound and logical. The verdict in the Elrod Case, although conclusive as between the state and himself, is not in any sense conclusive of the truth of the transaction. He may have been guilty notwithstanding the verdict of the jury. There may *738 have been reasons in his case, growing out of the inability of the state to produce the same evidence on this trial as on the first, which induced the jury to acquit him, which did not exist in the case of Maughon; but, irrespective of this question, we are simply concerned with the proposition of law that, where two are jointly indicted as principals, the acquittal of one does not in any legal sense inure to the benefit of the other, although it may be a circumstance of exculpation. The case of Jackson v. State, 54 Ga. 439, is relied on by learned counsel for the plaintiff in error in support of his position that a new trial should be granted in order that Maughon may have the benefit of the acquittal of Elrod. The Jackson Case does not support this contention. In the Jackson Case Judge McCay, speaking for the court, gives as the reason why Jackson, the principal in the second degree, ought to have a new trial on account of the grant of a new trial to the principal in the first degree, that the record of the conviction of the principal in the first degree had been used on the trial of the other case and may have injured the accused, and that, this record having been expunged by setting the verdict aside, the principal in the second degree ought to have a new trial without this evidence bearing against him. In construing this decision the Supreme Court holds in the Bruce Case, supra, that the principle there announced did not conflict with the holding that the principal in the second degree may be tried and convicted of murder, although the principal in the first degree had been convicted of voluntary manslaughter only. And we say in this case that this principle does not conflict with the enunciation here made that where two are jointly indicted as principals in the first degree, and one is convicted of voluntary manslaughter, and subsequently the other is acquitted, this presents no reason why the verdict of conviction should be set aside and another trial granted. * * * While, as Judge McCay says in the Jackson Case, there may be some little confusion in the books as to the use of a verdict of guilty or acquittal of the principal in the first degree on the trial of the principal in the second degree, we think the true distinction is this: Where two men are jointly indicted, one as principal in the first degree, and one as principal in the second degree, the guilt of the principal in the first degree must be established by the state, but the record is not conclusive of that fact, and the conviction or acquittal may be denied, notwithstanding the record, and the verdict simply goes in evidence for what it is worth; but it is not conclusive and the truth may nevertheless be shown by evidence. The way we look at this case under the evidence none of this discussion is really material. Here two men were jointly indicted as principals in the first degree. One was tried and convicted of voluntary manslaughter, and the second was tried and acquitted, wholly without reference to the truth of the verdict in the first case, and the only pertinent and material question before us is whether the verdict was authorized by the law under the evidence in the present case. The law, as we have endeavored to show, authorized a verdict of guilty of voluntary manslaughter, and there is evidence to support such a verdict, although a jury has acquitted the other defendant, Elrod * * *" (Emphasis ours.)
The Court of Appeals of Kentucky in Gambrel v. Commonwealth, 283 Ky. 816, 143 S.W.2d 514, 516, held that under a statute subjecting accessories before the fact to the same punishment as principals, defendants jointly indicted for a felony may be convicted as principals or as aiders and abettors although the indictment charges neither with aiding and abetting. The Court also held that the defendant *739 could be convicted on a separate trial of aiding and abetting the principal in the commission of the crime after the principal had been acquitted.
In its opinion, the Court said:
"There is no merit in appellant's contention that he should not have been convicted as an aider and abettor on a separate trial after Lath had been acquitted as the principal. Appellant was indicted as principal and we cannot determine from the record whether or not the jury convicted him of firing the shot which killed Jones or of aiding and abetting Lath in so doing. However that may be, we have an unbroken line of decisions to the effect that a defendant may be convicted on a separate trial of aiding and abetting the principal in the commission of a crime after the principal has been acquitted. Reed v. Com., 125 Ky. 126, 100 S.W. 856, 30 Ky.Law Rep. 1212; Christie v. Com., 193 Ky. 799, 237 S.W. 660, 24 A.L.R. 599; Smith v. Com., 216 Ky. 813, 288 S.W. 752; Com. v. Long, 246 Ky. 809, 56 S.W.2d 524. We are not disposed to grant appellant's request and overrule these cases as unsound, as it is evident that different juries may reach different conclusions as to the guilt of the principal."
In Davis v. State, 1899, 152 Ind. 145, 52 N.E. 754, 755, the Supreme Court of Indiana held that where two men had been indicted for murder and the principal in the first degree was convicted of manslaughter that this did not preclude a subsequent trial for the principal in the second degree on any higher crime than manslaughter.
The Court also passed on pleas in abatement filed prior to the trial, the Court saying:
"Notwithstanding the provisions of the statute, that in all criminal prosecutions the defendant may plead the general issue orally, and under it may prove on the trial that he has before had judgment of acquittal, or been convicted or pardoned, for the same offense, or any matter of defense, except insanity, it has been held in this state that such matters as might be set up by special plea at common law may yet be presented in that manner. (Citations omitted.) But the object of a special plea in criminal procedure is not to traverse the charge contained in the indictment, or to give in detail the circumstances constituting the defense. At common law its scope was limited to certain special defenses, and no reason exists at this day for enlarging its range. It is said in Clem v. State, 42 Ind. 420 431: `The defenses which a defendant might plead specially in bar of the indictment were formerly of four kinds,  a former acquittal, a former conviction, a former attainder, and a pardon * * * the defenses which a defendant may thus plead specially are reduced to two,  a former acquittal and a former conviction.' Since the decision in Clem v. State, supra, a statute has been enacted requiring the defense of insanity to be specially pleaded. * * * None of the matters contained in the second, third, and fourth pleas to the second count of the indictment are such as can be specially pleaded. They could not have been so pleaded at common law, nor does the Code of Criminal Procedure authorize that mode of pleading such defenses. The demurrers to these pleas were properly sustained.
"The motion for a new trial calls in question the action of the court in sustaining objections to certain evidence offered by appellant, and in admitting other evidence over his objection. The record of the trial and conviction of Barney Robarts for the crime of manslaughter in killing Newkirk was properly excluded. The guilt or innocence of the appellant of the crime with which he was separately *740 charged did not depend upon the conviction or acquittal of Robarts. * *"
In People v. Simpson, 1944, 66 Cal. App.2d 319, 152 P.2d 339, 344, the Court said:
"A further point is that the dismissal of the charge of kidnaping against defendants Jenks and Hanson operated as an acquittal of appellant, since her offense consisted of aiding and abetting her codefendants in the commission of that crime. The court was authorized to dismiss the kidnaping charge as to defendants Jenks and Hanson if the dismissal was considered to be in the interest of justice. Sec. 1385, Penal Code; People v. Romero, 1936, 13 Cal. App.2d 667, 57 P.2d 557. The judgment of dismissal was not an adjudication that the crime of kidnaping had not been committed, although it has operated to free the codefendants from further prosecution and from punishment for that crime. They stand as if they had never been prosecuted for the crime of kidnaping. The judgment of dismissal has no greater effect. But even if Jenks and Hanson had been acquitted in a separate trial from that of appellant or had been convicted of lesser crimes than those charged in the information, the conviction of appellant, although it was based upon her aiding and abetting in the commission of both crimes, would not have been thereby invalidated. People v. Bearss, 1858, 10 Cal. 68; People v. Newberry, 1862, 20 Cal. 439; People v. Blackwood, 1939, 35 Cal. App.2d 728, 96 P.2d 982. See also cases cited in note, 24 A.L.R. 599."
In Sons v. State, Fla.App. 1958, 99 So.2d 888, 889, this court, in an opinion by Chief Judge Kanner, said:
"A principal in the first degree and a principal in the second degree are both principals, and are punishable alike. Consequently, the degrees are designed merely to indicate that one actually committed the felonious act, and that the other was present by (actually or constructively) aiding and abetting the felonious act. Both are equally guilty; and it is not material as to which one is alleged to have actually committed the felony, if it is duly proven that one committed the act and that the other was present and aided and abetted the alleged felony. Chapter 776, Florida Statutes Annotated; Brown v. State, 1921, 82 Fla. 306, 89 So. 873; Pope v. State, 1922, 84 Fla. 428, 94 So. 865; Lake v. State, 1930, 100 Fla. 373, 129 So. 827, 131 So. 147. See also Henderson v. State, Fla. 1954, 70 So.2d 358, and Hornbeck v. State, Fla. 1955, 77 So.2d 876.
"Where there are two or more persons charged in the same count of an information or indictment with committing a felony as principals in the first degree, it is permissible to show that one of the persons charged actually committed the felony and that the other person or persons were present aiding and abetting the commission of such felony, and they may be convicted under such charge and proof. Jimenez v. State, 1947, 158 Fla. 719, 30 So.2d 292, 297."
In Jimenez v. State, supra, it was held that where A. is charged as principal in the first degree with the commission of a felony, and by the same count B. is charged as principal in the second degree as being present, aiding and abetting, each may be convicted, though the evidence establishes that B. actually committed the felony and that A. was present aiding and abetting the commission thereof.
In the case of McCall v. State, 1935, 120 Fla. 707, 163 So. 38, the Supreme Court of Florida had for review for the second time a conviction of a principal in the second degree charged with murder in the first degree. See McCall v. State, 116 Fla. *741 179, 156 So. 325 for the opinion of the Court in the first case.
In the second appearance of McCall v. State, supra, the Court, in its opinion, said [120 Fla. 707, 163 So. 43]:
"It is well settled that where an indictment charges two persons with the crime of unlawful homicide, one of them being charged as principal in the first degree and the other as principal in the second degree, the person charged as principal in the second degree may be put on trial and may be convicted before the trial of or the conviction of the principal in the first degree, and this may be done although the principal in the first degree has been acquitted of the charge. See Rooney v. United States, 203 F. 928, 122 C.C.A. 230; United States v. Hughes, D.C., 34 F. 732; United States v. Libby, 26 Fed.Cas. page 928, No. 15,597; Jones v. State, 64 Ga. 697; State v. Lee, 91 Iowa 499, 60 N.W. 119; State v. Anderson, 89 Mo. 312, 1 S.W. 135; State v. Whitt, 113 N.C. 716, 18 S.E. 715; State v. Fley, 2 Brev. (4 S.C.L.) 338, 4 Am.Dec. 583.
"The record of the conviction of the person charged as principal in the first degree is admissible in evidence on the trial of the person charged as principal in the second degree, but it is only prima facie evidence and not conclusive evidence of such guilt on such trial. Studstill v. State, 7 Ga. 2; Tuttle v. State, Tex.Cr.App., 49 S.W. 82; Coxwell v. State, 66 Ga. 309."
The facts, as gleaned from the Court's opinion in McCall v. State, supra, show that the trial court permitted the introduction of evidence to show the guilt of one, Coy Strickland, in committing the homicide in question, and that the jury must consider him guilty as a principal in the first degree before they could convict Jim O. McCall of being guilty as a principal in the second degree, who was only constructively present at the scene of the crime. The trial judge charged the jury as follows:
"`Gentlemen, certain evidence has been offered by the State in the form of documents, which will be read to the jury. This evidence is introduced solely to furnish light upon the guilt or innocence of Coy Strickland described in the indictment under which the defendant is now on trial. You understand that Coy Strickland is not on trial but in the State's proof it is necessary to prove that Coy Strickland, named in the indictment, was the principal in the alleged homicide, and the evidence which is about to be read to you is admitted solely for the purpose of throwing light upon the guilt or innocence of Coy Strickland, and cannot and must not be considered by the jury as affecting the guilt or innocence of the defendant now on trial, Jim O. McCall. * * *"
The appeal in this case is based on the order of the lower court quashing an information which charged the appellee with being a principal in the second degree for an assault with intent to kill. The court's order was based on a motion to quash on the ground that the principal in the first degree, named in said information, had been acquitted in a previous trial on the ground of self-defense, and that, therefore, under the Supreme Court's decision in Kelley v. State, supra, the principal in the second degree could not be tried. The appellee, Peel, attached to his motion the following exhibits: An affidavit of Floyd Albert Holzapfel (the principal in the first degree) that he was tried and acquitted on the ground of self-defense; the information filed in the Holzapfel case; the minutes of the clerk of the criminal court of record of the Holzapfel trial; the reporter's certified copy of Holzapfel's testimony during his trial, wherein he was acquitted; and the court's charge to the jury on self-defense in the Holzapfel trial.
*742 The record discloses that several witnesses, both for the State and for the defense, testified in the former trial of Holzapfel, thus it was apparent that the whole record was not before the judge of the criminal court at the time he granted the motion to quash. We are convinced that the lower court committed error in granting the motion to quash upon the record that was presented to him, as the said record was not complete and could not show that Holzapfel was acquitted solely on the basis of self-defense.
We further hold that the lower court was in error in granting the motion to quash based on the acquittal of Holzapfel as a principal in the first degree even if the whole record of the former trial had been before him and it had divulged that the sole ground of the acquittal of Holzapfel had been the ground of self-defense, as a principal in the second degree may be tried even though the principal in the first degree has been acquitted in a previous trial. Our conclusions in this case are not contrary to the rule enunciated in Kelley v. State, supra, and Hysler v. State, supra, upon which cases the lower court stated he based his order granting the motion to quash the information. While the opinion of the Supreme Court in Kelley v. State, supra, did not cite any previous decisions as a basis for its ruling, to-wit: that where principals in the first and second degree are jointly tried and the principal in the first degree is found not guilty and the sole basis for the conviction of the principal in the second degree was being present, aiding and abetting the principal in the first degree, and the evidence adduced showed that the principal in the first degree was not guilty by reason of self-defense and, therefore, had committed no crime as principal in the first degree, the principal in the second degree could not be guilty since no crime was committed of aiding and abetting the principal in the first degree.
The opinion of the Supreme Court in Hysler v. State, supra, only stated [136 Fla. 563, 187 So. 262]:
"I have examined the cases relied on by petitioner, Kelley v. State, 79 Fla. 182, 83 So. 909, 16 A.L.R. 1465; Flynn v. State, 86 Fla. 467, 98 So. 76; State ex rel. Maudlin v. Hardie, 114 Fla. 374, 154 So. 183. These cases hold that conviction and punishment of the principal must be done at the same time or must precede the conviction and punishment of the accessory. This doctrine is still in force in this state and what has been said here in no sense militates against it."
As we have before stated, the case of Kelley v. State, supra, was grouped with certain other cases which involved accessories and not principals, whereas the Kelley case actually involved principals in the first and second degree and not accessories either before or after the fact.
If this case should be subsequently tried on the information which was quashed below, the state would have the burden of proving Holzapfel guilty as the principal in the first degree before Peel could be found guilty as a principal in the second degree of aiding and abetting the principal in the first degree of the assault with intent to kill.
For the reasons above stated, this case is reversed for further proceedings in the lower court not inconsistent with this opinion.
SHANNON, J., and O'CONNELL, STEPHEN, Associate Judge, concur.